[No. G009572. Fourth Dist., Div. Three. Oct. 30, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH GAMEZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976(b), parts IV, V, VI, VII and VIII in the majority opinion are not published. Also not published is part II in the concurring opinion of Wallin, J.

## COUNSEL

Stephen Gilbert, under appointment by the Court of Appeal, for Defendant and Appellant.

Ronald Y. Butler, Public Defender, Carl C. Holmes, Chief Deputy Public Defender, and Thomas Havlena, Deputy Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Keith M. Motley and Karl Terp, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOORE, J.**—Ralph Gamez (defendant) was convicted in a jury trial of attempted murder (count I) and assault with a firearm against the same victim (count II); assault with a firearm against three additional victims (counts III, IV, V); discharging a firearm from a vehicle (count VI); and discharging a firearm at an unoccupied vehicle (count VII). Enhancements for great bodily injury and great bodily injury in resulting from the discharge of a firearm from a vehicle during the attempted murder and assault with a firearm charges in counts I and II, and for personal use of a firearm in the attempted murder and the four assault with a firearm charges (counts I through V) were found true. Finally, defendant was found to have committed all of the crimes in association with a criminal street gang.

In the published portion of the opinion, we consider the following contentions made by defendant: (1) The admission of opinion evidence regarding gangs was in contravention of the Evidence Code and the confrontation clause; and (2) there was insufficient evidence that defendant committed the crimes in association with a criminal street gang, as required by Penal Code section 186.22, subdivision (b).

Amici curiae further allege the criminal street gang enhancement pursuant to Penal Code section 186.22, subdivision (b) is unconstitutional because it (1) is fatally overbroad and vague and punishes the right to free association in violation of the First Amendment of the United States Constitution and (2) violates due process of law.

## FACTS

Teenagers Yvette Costa and her sister Rachel lived with their family in Santa Ana. On August 31, 1989, two teenage boys, Frankie Castellanos and Rachel's boyfriend, Guillermo Briseno, came over for dinner. Guillermo, a member of the "Highland Street" gang who went by the moniker of "Rambo," parked his car in front of the house. Police believed Guillermo had been involved in a recent shooting directed against a rival gang with whom Highland had previously been affiliated, "Southside F-Troop" (Southside).

Later that evening, the Costa sisters and two of Yvette's friends, Lorena and Norma Quintana, were standing outside the residence looking at photographs. At about 9 p.m., a black Nissan truck came around the corner with its lights out, followed by a Buick Regal. As the truck drove slowly by, an individual in the passenger seat of the truck pointed a gun out the window and fired five to ten shots.

Yvette screamed that the people in the truck were from "South," meaning Southside. The gun had a long black barrel, and the assailant was approximately 14 feet away from the girls when he opened fire. Lorena was shot in the back but survived. The other girls were not hurt.

Tereso Rangel, who lived next door to the Costas, had parked his car on the street earlier that afternoon. He heard the shots, but was unable to inspect his car for damage because police were investigating the shooting. He was told his car had been damaged. The next morning, he noticed the back window was broken out and his car had bullet holes in it.

Yvette Costa identified defendant as the shooter to investigating officers and at trial. She knew him by his gang nickname of "Hydro." Norma Quintana picked defendant out of a photographic lineup.

Defendant's residence in Anaheim was searched pursuant to warrant approximately 12 days after the shooting. A black Nissan truck was parked in the driveway. A box of bullets, paper, books, a plaque, T-shirt, and a traffic ticket were seized. The plaque was addressed to defendant's brother Jerry, a known Southside gang member, and had a reference to the Southside gang on it. The T-shirt had "Southside" printed on it. The traffic ticket was issued to defendant while he had been driving the truck. The books and papers were from defendant's school and had writing on them referring to the Southside gang and "Hydro."

Three Santa Ana police officers testified as experts regarding their knowledge of gangs in general and the Southside and Highland Street gangs in

particular. Southside and Highland Street had formerly been factions within the F-Troop gang, but had since split and were now rivals. One of the officers opined the shooting was a "pay-back" for a prior shooting by Highland Street against Southside. Another opined defendant was a member of Southside. Photographs taken in October 1987, showing defendant with other known Southside gang members "throwing" the gang's hand signs, were introduced to corroborate the officers' opinions. Based on his own personal knowledge, crime and victim reports, conversations with other officers and statements by gang members, one officer gave his opinion that Southside was a criminal street gang engaged in a pattern of criminal activity.

### DEFENSE

Various family members testified defendant was at home watching television the entire evening of August 31, 1989. The truck was owned by his brother but was usually driven by his father, who had driven it on August 31 and returned home before 9 p.m.

### DISCUSSION

### I

### EXPERT OPINION TESTIMONY

Defendant does not object to the officers' testimony concerning criminal street gangs in general, involving subjects such as territory, retaliation, graffiti, hand signals, and dress. He does object to the officers being allowed to testify that various individuals, including defendant, were members of either the Southside or Highland gangs, that the shooting was in retaliation for a prior crime perpetrated on the Southside gang by Highland Street involving Guillermo Briseno, and various prior crimes were perpetrated by Southside rendering them a criminal street gang within the meaning of section 186.22. Defendant does not cite any particular testimony; rather he attacks the "opinions as to the reasons for appellant's actions and the actions of others, and about appellant's culpability under Penal Code section 186.22."[1] His two primary contentions are that (1) the officers' opinions were not of the type which would assist the trier of fact and (2) the information used by the officers in forming their opinions was of a sort that cannot be reasonably relied upon by an expert.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

## A. *The Officers' Opinions Were of Assistance to the Trier of Fact*

Evidence Code section 801 sets forth the grounds for the admission of expert opinion testimony. It states, "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and [¶] (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." Defendant relies upon *People* v. *Hernandez* (1977) 70 Cal.App.3d 271 [138 Cal.Rptr. 675] as support for the rather unspecific notion that the officers' testimony went "too far . . . ." *In Hernandez,* the court found an abuse of discretion in admitting a police officer's opinion that defendant's shaking his head from side to side meant he had been asked if he had any more narcotics and had responded that he did not. (*Id.* at pp. 274-275.) The court held the officer's expertise did not add any probative value to the evidence, which the jury was quite capable of analyzing for itself. (Id. at p. 281.)

Here, the situation was very different. The relationship between Southside and Highland Street, defendant's membership in Southside, the Highland Street membership of some of the guests at the Costa residence on the night of the shooting, and the ongoing criminality of Southside were all matters beyond common knowledge. ■ "[T]he decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact. [Citations.]" (*People* v. *Cole* (1956) 47 Cal.2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435].)

■ Section 186.22 requires evidence of a gang's past criminal conduct and ongoing criminal nature. This may often require some expert testimony regarding the activities of the gang. ■ To the extent such testimony necessarily paralleled elements of the criminal street gang allegation, Evidence Code section 805 provides, "Testimony in the form of opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." So long as expert testimony assists the trier of fact, it is proper even though it provides evidence of the elements of the allegations charged.

In addition, case law has upheld expert police officer testimony in the field of gang sociology and psychology. *In re Darrell T.* (1979) 90 Cal.App.3d 325 [153 Cal.Rptr. 261] is illustrative. There, a high school security guard testified in a murder prosecution that two campus gangs had been rivals for two years prior to the murder. One of the gangs, the "Shotgun Crips," fought with the "Fives" gang the day before the killing. The security guard testified that "[t]he various Crip factions would squabble among themselves, but would not unite with a non-Crip gang such as the Fives to form an alliance. Thus, while each of the separate Crip factions was, in effect, autonomous, the various Crip units involved . . . were by their very nature 'anti-Fives.' " (*Id.* at pp. 328-329, fn. omitted.)

In *People v. McDaniels* (1980) 107 Cal.App.3d 898 [166 Cal.Rptr. 12], the court upheld testimony from a Los Angeles County sheriff's deputy regarding the " 'social customs, methods of operation of gangs in south central Los Angeles. . . .' " The court referred to the testimony as "sociological evidence," and upheld its admission over a claim the officer lacked that expertise. (*Id.* at pp. 904-905.) *People v. Gonzalez* (1990) 51 Cal.3d 1179 [275 Cal.Rptr. 729, 800 P.2d 1159] is also illustrative, but as an example where such testimony was not admitted. In *Gonzalez*, a police officer and gang expert properly testified on rebuttal concerning gang activities and methods in a certain geographical area, but also testified that "from his training, experience, and information," a defense witness was not an active member of a certain gang. (*Id.* at p. 1237.) This latter portion of his testimony was stricken by the trial court because, on voir dire, the officer "conceded his opinion was based only on the fact that [the witness's] name was unknown to sheriff's investigators and did not appear in the department's files." (*Ibid.*) ▆ In contrast, the officers in the case before us were able to establish a much stronger foundation for their testimony by including personal observations of and discussions with gang members as well as information from other officers and the department's files. The foundation for the officers' expert opinions was diverse and strong, and the opinions were properly admitted.

B. *The Officers' Expert Opinions Did Not Rely on Impermissible Matter*

Defendant contends the officers' opinions "were no more than a vehicle for the introduction into evidence of hearsay to prove facts that could not lawfully be proven by the prosecution." He argues the officers relied upon information received from unidentified and unreliable parties in violation of the Evidence Code and the confrontation clause.

Defendant relies upon *Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653, A.L.R.4th 1747]. *In Isaacs*, our

Supreme Court indicated that, on retrial, the trial court should exclude testimony by an expert witness regarding crime statistics of the City of Pasadena gleaned from an unidentified " 'contact at a police department . . . .' " (*Id.* at p. 133.) The court indicated that if the information had been received from a more reliable source, such as a California Department of Justice report, it would have been admissible. However, obtaining such information from "an unidentified contact in an unidentified police department scarcely constitutes the sort of material that may be reasonably relied upon by an expert in forming his opinion. [Citation.]" (*Id.* at pp. 133-134.)

Evidence Code section 801, subdivision (b) permits an expert to rely upon otherwise inadmissible evidence in forming an opinion if it is "of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates . . . ." (See also 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 29.4, pp. 1026-1027.) Evidence Code section 802 provides, "A witness testifying in the form of an opinion may state on direct examination the reasons for his opinion and the matter . . . upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion. . . ."

Here, the officers opinions were based upon personal observations and experience, the observations of other officers in the department, police reports, and conversations with other gang members. The officers also had a photo of defendant "throwing" gang signs with other gang members in October 1987, and access to the writings on defendant's textbooks and papers which displayed his gang affiliation. They knew defendant had been a Southside gang member in the past and had "hung out" with its members. In addition, Guillermo Briseno had been implicated as the shooter in a prior incident where the victim was a Southside member.

The statements of gang members were only a portion of the foundation for the officers' opinions. The situation here is thus not analogous to that in *Isaacs v. Huntington Memorial Hospital, supra,* 38 Cal.3d 112, where the entirety of the expert's opinion was based upon one source who was unidentified. And, in *People v. McDaniels, supra,* 107 Cal.App.3d 898, the court, in upholding sociological testimony by a deputy sheriff, stated, "The officer established his credentials as follows: six and one-half years assignment to the sheriff's street gang detail in south central Los Angeles; he was told to ascertain 'the number of and find out as much as best [he could] the names of people who belong to the various gangs in that particular station's area' by gathering information from 'crime reports, interviews . . . of people in custody, and conversations with young people on the streets.' In addition, [he] stated that 'as part of [his] duties [he had] made an effort to study the social customs, methods of operation of gangs in south central Los

Angeles.'" (*Id.* at p. 904.) The court dismissed defendant's contention that the officer's opinion was based on improper hearsay and violated Evidence Code section 801, stating, "Defendant has made no showing that the matter relied on here was other than of 'a type that reasonably may be relied upon by an expert.' Indeed, as the Law Revision Commission comment to section 801 notes, '[t]he variation in the permissible bases of expert opinion is unavoidable in light of the wide variety of subjects upon which such opinion can be offered. In regard to some matter of expert opinion, an expert *must*, if he is going to give an opinion that will be helpful to the jury, rely on reports, statements, and other information that might not be admissible evidence.' Such was necessarily the case, we think, with regard to the type of sociological evidence presented in this instance." (*Id.* at p. 905.)[2]

We fail to see how the officers could proffer an opinion about gangs, and in particular about gangs in the area, without reference to conversations with gang members. While the credibility of those sources may not be beyond reproach, nevertheless, as the court in *McDaniels* and the Law Revision Commission comments to Evidence Code section 801 note, "[t]he variation in the permissible bases of expert opinion is unavoidable in light of a wide variety of subjects upon which such opinion can be offered." (*Ibid.*) To know about the gangs involved, the officers had to speak with members and their rivals. Furthermore, the officers did not simply regurgitate that which they had been told. Rather, they combined what they had been told with other information, including their observations, in establishing a foundation for their opinions. The statements of gang members, which in part formed the bases of the officers' opinions, were not recited in detail during the officers' testimony but were referenced in a more general fashion, along with other, corroborating information.[3] ■ "'While an expert may state on direct

[2]In contrast, in *In re Wing Y.* (1977) 67 Cal.App.3d 69 [136 Cal.Rptr. 390], the court held that a police officer's testimony that various witnesses had reputations as being gang members was inadmissible hearsay. (*Id.* at pp. 74-75; 77-78.) However, the officer was not qualified to give an expert opinion, and therefore his testimony was governed by the more restrictive rule under Evidence Code section 702 regulating the testimony of a lay witness, requiring that he have personal knowledge concerning the subject matter of his testimony. (*Id.* at pp. 77-78.)

[3]Thus, for example, the officers properly gave their opinion of the motive for the shooting, as motive was relevant to establish that the crime was perpetrated to promote, further, or assist the gang. In opining that the shooting was in retaliation for an earlier shooting by Highland Street against Southside, the officers explained that the two gangs did not get along and were rivals. This, in turn, was based upon various statements by gang members, prior incidents involving the gangs, and other information gathered and observations made by the officers. In relating the earlier shooting by Highland Street against Southside, the officers noted that the perpetrators yelled "Highland Street" before the shooting, and a witness yelled "There's Rambo," and "It's Highland Street." Other testimony established that Guillermo Briseno, present at the Costa house on the night of the shooting, was known as "Rambo" and had been a member of Highland Street. Also, the gun used in the shooting was seized from the home of two self-admitted members of Highland Street.

examination the matters on which he relied in forming his opinion, he may not testify as to the details of such matters if they are otherwise inadmissible. [Citations.] The rule rests on the rationale that while an expert may give reasons on direct examination for his opinions, including the matters he considered in forming them, he may not under the guise of reasons bring before the jury incompetent hearsay evidence. [Citation.]' " (*People* v. *Coleman* (1985) 38 Cal.3d 69, 92 [211 Cal.Rptr. 102, 695 P.2d 189]; quoting *Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 788-789 [174 Cal.Rptr. 348].)

■ While we are sensitive to defendant's concern that a conviction not be based on hearsay testimony, that is not what occurred here. The officers did not simply recite what they had been told, but instead provided foundational testimony for their opinions which was sufficiently corroborated by other competent evidence, both physical and testimonial. Accordingly, we do not find that their testimony violated the confrontation clause, as the statements were not themselves offered for the truth of the matters asserted, but instead were generally related as one of the bases for the officers' expert opinions. (See *United States* v. *Lujan* (9th Cir. 1991) 936 F.2d 406, 410, citing *United States* v. *Kirk* (9th Cir. 1988) 844 F.2d 660, 663.) Nor do we find the officers based their opinions upon impermissible hearsay in violation of the Evidence Code.

II

THE CONSTITUTIONALITY OF SECTION 186.22

Amici argue that section 186.22 is unconstitutional. First, amici claim the term "criminal street gang" is vague and overbroad, thus violating appellant's First Amendment right of freedom of association. Secondly, amici argue, as does appellant's counsel,[4] that the statute violates due process unless appellant is shown to have knowledge of the predicate offenses committed by the gang. We shall treat these two contentions separately.

A. *Vagueness and Overbreadth: Freedom of Association*

Subdivision (a) of section 186.22 provides, "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by . . . ." Subdivision (b)(1)

---

[4]Though appellant's counsel raised this issue in the context of the sufficiency of the evidence, judicial economy dictates it be discussed in this portion of the opinion.

provides, "Except as provided in paragraph (2), any person who is convicted of a felony which is committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by . . . ."

Subdivision (e) provides, "As used in this chapter, 'pattern of criminal gang activity' means the commission, attempted commission, or solicitation of two or more of the following offenses, provided at least one of those offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses are committed on separate occasions, or by two or more persons: . . ." The subdivision then goes on to list eight categories of predicate offenses.

Subdivision (f) provides, "As used in this chapter, 'criminal street gang' means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (8), inclusive, of subdivision (e), which has a common name or common identifying sign or symbol, whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

 Defendant first claims the definition of "criminal street gang" found in subdivision (f) is too broad to survive constitutional scrutiny. He argues section 186.22 punishes membership in groups as diverse as the Los Angeles Police Department, Humboldt County environmental activists, or, for that matter, any group whose *individual* members may commit criminal offenses. Defendant claims the fact that the statute could apply to such diverse groups renders it overbroad and void for vagueness. He attempts to distinguish *People* v. *Green* (1991) 227 Cal.App.3d 692 [278 Cal.Rptr. 140], which held section 186.22 is not unconstitutionally vague or overbroad, on the grounds *Green* did not address the outer boundaries of the statute's application, or First Amendment freedom of association issues.

 "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." (*City Council* v. *Taxpayers for Vincent* (1984) 466 U.S. 789, 800 [80 L.Ed.2d 772, 104 S.Ct. 2118].) Defendant's analogy to the Los Angeles Police Department is thus inapposite. Section 186.22, subdivision (f) defines "criminal street gang" as an ongoing organization having "as one of its primary activities" the commission of one of the enumerated offenses. Though members of the Los Angeles Police Depart-

ment may commit an enumerated offense while on duty, the commission of crime is not a *primary activity* of the department. Section 186.22 does not punish association with a group of individuals who, in a separate capacity, may commit crimes. Rather, it requires that one of the primary activities of the group or association itself be the commission of crime. █ The section regulates conduct, not speech or association, and there is no right of association to engage in criminal conduct. Similarly, environmental activists or any other group engaged in civil disobedience could not be considered a criminal street gang under the statutory definition unless one of the primary activities of the group was the commission of one of the eight enumerated crimes found within the statute. On the other hand, one is free to associate with whomever one wishes under the statute, so long as the primary purpose of associating one's self with the group is not to commit crime. It is not the association with other individuals *alone* which section 186.22 addresses, but the association with others *for the purpose of promoting, furthering or assisting them in the commission of crime.*

█ In order for a statute which regulates conduct to be considered overbroad, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." (*Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 615 [37 L.Ed.2d 830, 841-842, 93 S.Ct. 2908].) A finding of overbreadth entails a statute that achieves its goal "by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." (*NAACP* v. *Alabama* (1964) 377 U.S. 288, 307 [12 L.Ed.2d 325, 338, 84 S.Ct. 1302].) █ This statute does not invade the area of protected freedoms. It does not seek to regulate speech but conduct, and regulates only conduct which is criminal. The right of association is affected only to the extent the purpose of association is the perpetuation of criminal activity. █ Since section 186.22 seeks only to regulate association which is directed towards the perpetuation of criminal activity, its sweep is not overbroad.

█ In regard to vagueness, "a statute must be sufficiently definite to provide adequate notice of the conduct proscribed. . . . [¶] [It] must provide sufficiently definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement." (*People* v. *Superior Court* (*Caswell*) (1988) 46 Cal.3d 381, 389-390 [250 Cal.Rptr. 515, 758 P.2d 1046].) However, "reasonable certainty is all that is required. A statute will not be held void for vagueness if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources. [Citations.]" (*In re Marriage of Walton* (1972) 28 Cal.App.3d 108, 116 [104 Cal.Rptr. 472].) " '. . . [T]he constitution does not require impossible standards'; all that is required is that the language

'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . . .' [Citation omitted.]" (*Roth* v. *United States* (1957) 354 U.S. 476, 491 [1 L.Ed.2d 1498, 1510-1511, 77 S.Ct. 1304].)

This statute purports to regulate conduct involving membership in an organization which has as one of its primary activities, and therefore purposes, the commission of crime. Moreover, it is not merely the passive association with such a group which is criminalized, but the active participation in the group which renders one susceptible to prosecution. The statute requires that an individual either wilfully [subdivision (a)] or with specific intent [subdivision (b)(1)] "promote, further, or assist in any [felonious] criminal conduct" by members of that gang. Quoting from our colleagues in *People* v. *Green, supra*, 227 Cal.App.3d at page 700: "Section 186.22 does not make 'membership' criminal; rather, under specified circumstances it makes 'active participation' criminal. By using the phrase 'actively participates,' the California Legislature evidently sought to prevent prosecution of persons who were no more than nominal or inactive members of a criminal street gang. The phrase, in context, has the same meaning as 'active membership' as defined by the case law. To be convicted of being an active participant in a street gang, a defendant must have a relationship with a criminal street gang which is (1) more than nominal, passive, inactive or purely technical and (2) the person must devote all, or a substantial part of his time and efforts to the criminal street gang. So construed, we see little likelihood that the phrase will permit arbitrary law enforcement or provide inadequate notice to potential offenders. [¶] Neither do we see any difficulty with the term 'membership,' a term which, as discussed, has an ordinary meaning and which has been defined further in the cases. It is true that the term is not susceptible of precise definition, but absolute definition is not required. The argument that 'membership' is overbroad as potentially including persons who have been intimidated into membership is irrelevant. Section 186.22 does not prohibit membership; it prohibits the promotion, furtherance or assistance in any felonious criminal conduct by members. That a member may not be a whole-hearted participant in the felonious criminal conduct should have no bearing on the criminal liability of the person who promotes, furthers or assists such conduct."

In addition, while the word "gang" may be vague, the term "criminal street gang" is not. As *Green* points out, "[S]ection 186.22, subdivision (a) does not make it criminal to be a member of an undefined 'gang'; it prohibits membership in a 'criminal street gang,' . . . ." (*Id.* at p. 701.) The definition of a criminal street gang as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts

enumerated," specifically apprises an individual that it is not mere association with others, but association with others for the purpose of committing crime, where the association's very existence is founded upon the commission of crime, that is prohibited. This is not vague. (See § 186.22, subd. (f); *People* v. *Green, supra,* at pp. 701-702.)

Defendant analogizes to *In re Timothy R.* (1988) 202 Cal.App.3d 593 [248 Cal.Rptr. 721], where the court struck down a local ordinance which purported to prohibit "the presence on properly posted business or commercial premises or other private property of anyone who does not have written permission from the owner, lessee or other person in charge. [Fn. omitted.]" (*Id.* at pp. 595-596.) Yet there, the court noted the problem with the statute was that it was susceptible to *subjective* police enforcement and interpretation. (*Id.* at pp. 600-601.) Such a potential for arbitrary and discriminatory enforcement goes to the very heart of vagueness. (*People* v. *Superior Court (Caswell), supra,* 46 Cal.3d at pp. 389-390.)

Here, the danger of such selective or arbitrary enforcement is not present. The standards enunciated in section 186.22 are capable of being "objectively ascertained by reference to common experiences of mankind." (See *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1129 [80 Cal.Rptr. 897, 459 P.2d 225].)

### B. *Section 186.22 Does Not Violate Due Process*

Defendant urges that, if this court does not hold section 186.22 to be unconstitutional per se, the court should strictly construe it to avoid punishing "association activity." Defendant argues such strict construction requires the prosecution to prove he was aware of the predicate offenses committed by other gang members. Without such strict construction, he argues, he would be punished for pure "association" activity without any knowledge of facts causing his association with the group to fall within the parameters of the statute. *In Lanzetta* v. *New Jersey* (1939) 306 U.S. 451 [83 L.Ed. 888, 59 S.Ct. 618], the United States Supreme Court held that due process requires that "[a]ll . . . be informed as to what the State commands or forbids. [Fn. omitted.]" (*Id.* at p. 453 [83 L.Ed. at p. 890].) Defendant also argues that, since subdivision (a) requires actual knowledge that other members of the group have engaged in a pattern of criminal activity, the same must be true for an imposition of sentence under subdivision (b).[5]

Subdivision (a) of section 186.22, which was not charged, punishes an active member of a criminal street gang who wilfully promotes, furthers, or assists in the felonious conduct of the gang "*with knowledge that its members*

---

[5]Subdivision (a) of section 186.22 requires that knowledge of the pattern of gang activity be proved. This requirement is absent from the language of subdivision (b).

*engage in or have engaged in a pattern of criminal gang activity . . . ."*
(Italics added.) It is not an enhancement, but a substantive offense, and punishes one who, with knowledge of the criminal nature of the gang, willfully promotes or assists it in its pursuit of crime. Subdivision (b) is an enhancement, and creates additional punishment for anyone who commits a felony for the benefit of, at the direction of, or in association with a street gang, as that term is defined, and with the specific intent to promote, further, or assist in the criminal conduct of members of the gang. The two subdivisions are also distinct because they punish completely separate conduct. The gravamen of subdivision (a) is the participation in the gang itself. This "active" participation must require knowledge of the gang's primary activities; this is axiomatic and included in the statutory language. Subdivision (b), however, is narrower. It is directed at a particular crime. It punishes an individual who has committed a crime for the benefit of a gang and with the specific intent to promote, further, or assist in any criminal conduct by members of the gang. It does not require knowledge of the predicate offenses as a prerequisite to its imposition.

██ "[S]tatutes must be construed in a reasonable and common sense manner . . . ." (*Herbert Hawkins Realtors, Inc.* v. *Milheiser* (1983) 140 Cal.App.3d 334, 338 [189 Cal.Rptr. 450].) ██ Nothing in the statute indicates that knowledge of the specific predicate offenses need be shown. ██ ██ The fact that subdivision (a) refers to and requires *knowledge* of a pattern of criminal gang activity is evidence that the failure to refer to knowledge in subdivision (b) was not a negligent omission by the legislature and that knowledge is not required to be proven.[6] "[A]bsent a constitutional basis for departure from a clear expression of legislative intent, we are bound thereby." (*Steed* v. *Imperial Airlines* (1974) 12 Cal.3d 115, 120 [115 Cal.Rptr. 329, 524 P.2d 801, 68 A.L.R.3d 1204].)

---

[6]The court in *People* v. *Green, supra,* 227 Cal.App.3d 692 stated that "Criminal liability under section 186.22 requires that a defendant have knowledge that the criminal street gang's members engage in a pattern of criminal conduct." (*Id.* at p. 702.) However, this language is taken directly from subdivision (a) of that section; it is not found anywhere in subdivision (b). This is indicative of a problem which permeates the *Green* decision; the court continually refers to section 186.22 when its primary focus is on subdivision (a) of that section. As we have pointed out, subdivision (b) is quite distinct from subdivision (a). Subdivision (a), a substantive offense, requires active participation in the gang and "knowledge that its members engage in or have engaged in a pattern of criminal gang activity. . . ." Subdivision (b), an enhancement, contains no similar language. In the absence of language to the contrary, we cannot impose an additional requirement to subdivision (b) which the Legislature obviously did not intend to require. (See *People* v. *Vaughn* (1961) 196 Cal.App.2d 622, 629 [16 Cal.Rptr. 711].) Nor is this opinion in disagreement with *People* v. *Green, supra,* 227 Cal.App.3d 692, as that opinion upheld a conviction for section 186.22, subdivision (a), and was not called upon, as are we, to rule upon the validity of subdivision (b). "[C]ases . . . are not authority for propositions not there considered." (*People* v. *Ceballos* (1974) 12 Cal.3d 470, 481 [116 Cal.Rptr. 233, 526 P.2d 241], citations omitted.)

However, defendant seeks to require the prosecution to prove in subdivision (b) not only defendant's commission of a crime with the stated purpose and intent, but also his actual knowledge of the specific predicate offenses committed. He urges us to adopt a knowledge requirement even though the statute is not so written, arguing that, if the statute is to pass constitutional muster, knowledge of the predicate offenses must be required. He further maintains that our failure to require that knowledge of the predicate offenses be proved would be tantamount to condoning the state's interference in an individual's constitutional right of association.

*In People* v. *Green, supra*, 227 Cal.App.3d 692, the court analogized to the federal Racketeer Influenced Corrupt Organizations statute (RICO), which criminalizes an individual's association with an enterprise which is involved in a "pattern of racketeering activity." "Plaintiff must show 'evidence [that defendant is part] of an ongoing organization, formal or informal, and . . . evidence that the various associates [of the organization] function as a continuing unit.'" (*Montesano* v. *Seafirst Commercial Corp.* (5th Cir. 1987) 818 F.2d 423, 426, quoting *Atkinson* v. *Anadarko Bank & Trust Co.* (5th Cir. 1987) 808 F.2d 438, 440; see also *United States* v. *Turkette* (1981) 452 U.S. 576, 583 [69 L.Ed.2d 246, 254-255, 101 S.Ct. 2524].) The government must show the organization is involved in racketeering activity, which is defined as the commission of various predicate offenses within a certain time period, and defendant's association with the organization is *for the purpose* of promoting such racketeering activity. However, knowledge of the predicate offenses themselves is not required. Even so, the RICO statute has survived numerous constitutional challenges. (See, e.g., *United States* v. *Tripp* (6th Cir. 1986) 782 F.2d 38, 42.)

Nor do we see any reason to require knowledge of the specific, charged predicate offenses here. A gang becomes a criminal street gang when one of its primary activities is the commission of various crimes. An individual who commits an offense for the benefit of or in association with the gang and with the specific intent to promote, further or assist members of the gang becomes liable for an additional sentence enhancement. Due process concerns would only be raised if the enhancement did not provide, "(1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt." (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 269 [198 Cal.Rptr. 145, 673 P.2d 732].) "[E]ven where persons of ordinary intelligence . . . differ with respect to the meaning of a statutory term . . . [s]uch differences do not necessarily make the statutes void." (*People* v. *Sassounian* (1986) 182 Cal.App.3d 361, 412 [226 Cal.Rptr. 880].) All that is required is that ordinary people can understand what kind of conduct is prohibited with a reasonable degree of certainty, by reference, if need be, to other definable

sources. (*County of Nevada* v. *MacMillen* (1974 11 Cal.3d 662, 673 [114 Cal.Rptr. 345, 522 P.2d 1345]. See also *People* v. *Davenport* (1985) 41 Cal.3d 247, 266 [221 Cal.Rptr. 794, 710 P.2d 861].)

 Such a reasonable degree of certainty is attained. There is nothing in the phrase "promote, further, or assist" which cannot be comprehended with a reasonable degree of certainty. Ordinary people should not have any trouble discerning that the statute penalizes those whose felonious conduct is undertaken with the intent to promote, further or assist a criminal street gang. Nor is the definition of criminal street gang beyond reasonable ascertainment. The requisite elements of such an organization are clearly set forth in subdivision (f), and the predicate offenses which constitute a "pattern of criminal gang activity" are listed in subdivision (e).

In failing to compel knowledge of the predicate offenses themselves, the Legislature did not offend notions of due process. The requirement that defendant commit the crime for the benefit of or in the association with the gang and with the specific intent to promote, further, or assist members of the gang in any criminal conduct is sufficient to appease any concerns regarding a violation of due process based upon "pure" association. No reason exists for us to require knowledge of the predicate offenses, as the conduct proscribed by the statute is ascertainable to a reasonable degree of certainty and involves felonious conduct undertaken with a specific, criminal intent. In short, an individual who violates subdivision (b) does so at the peril that the history of his gang will reveal the predicate offenses.

### III

#### Sufficiency of the Evidence—Section 186.22, Subdivision (b)

 Defendant contends the evidence adduced at trial was insufficient to show his conduct fell within the purview of section 186.22, subdivision (b). It requires defendant's conduct to be "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." Defendant argues the evidence was insufficient to show the existence of a street gang, that the offense was committed for the benefit of or in association with a street gang, and that it was committed with the specific intent to promote, further, or assist a street gang. We disagree.

#### A. *Sufficient Evidence Existed That Southside Was a Criminal Street Gang*

Defendant contends there was insufficient evidence Southside was a criminal street gang. He contends the proffered evidence of predicate of-

fenses did not establish that those offenses, though they may have been committed by Southside gang members, were in any way related to the gang or to defendant's association with the gang. However, the evidence belies his contention.

 An appellate court cannot reverse a conviction on a claim of insufficient evidence unless it clearly appears "that upon no hypothesis whatever is there sufficient substantial evidence to support it. [Citation.]" (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) We must review the whole record in the light most favorable to the judgment and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Towler* (1982) 31 Cal.3d 105, 117 [181 Cal.Rptr. 391, 641 P.2d 1253]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The critical question is, " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*Ibid.*, quoting *Jackson* v. *Virginia* (1979) 443 U.S. 307, 318-319 [61 L.Ed.2d 560, 573-574, 99 S.Ct. 2781].)

 We need not repeat the evidence that established Southside as an entity; that evidence was abundant. The officers who testified believed Southside had been engaged in a rivalry or "war" with Highland Street for at least a year. Certified court documents were introduced to establish five individuals affiliated with Southside had been convicted of various of the eight enumerated offenses found in section 186.22, subdivision (e). Expert testimony established these affiliations.[7]

Defendant argues even if the predicate crimes were shown, there was no proof they related in any way to the gang itself. We agree with defendant it must be shown the predicate crimes were gang related, as section 186.22, subdivision (f) requires the prosecution to prove that the gang has "as one of its primary activities" the commission of one or more of the eight enumerated offenses. To allow otherwise would be to punish

---

[7]The testimony established that the predicate crimes were committed by Southside and that Southside was a criminal street gang within the meaning of section 186.22, subdivision (f). Southside had a name and identified itself in a common manner on graffiti; it had its own hand signs and had as one of its primary activities the commission of various of the statutorily enumerated crimes. The proof was quantitatively and qualitatively distinct from that found insufficient in *In re Lincoln J.* (1990) 223 Cal.App.3d 322, 327-330 [272 Cal.Rptr. 852]. Much of the testimony specifically related to Southside and was offered by experts who were familiar with Southside and who had worked or did work in Southside territory. (Compare *In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 1004-1005 [279 Cal.Rptr. 236] [expert did not identify subject gang as operating in his area; in fact, expert was from another jurisdiction and did not offer testimony specific to the subject gang].)

defendant for the *unrelated* actions of people with whom he associated. Yet this was not the case. One of the five convictions involved the killing of two individuals on a bicycle shot in a rival gang's territory. There, a Southside member was searching for rival gang members to shoot in retaliation for a crime committed against Southside. In another conviction, a Southside gang member killed the father of a rival gang member after firing at and missing the gang member.[8] This evidence, when coupled with expert testimony about how gangs such as Southside are motivated and how offenses perpetrated against the gang are met with retaliation, was more than sufficient to establish that, at least with respect to these two predicate offenses, they were gang related. This is all the statute requires. ·

> B. *Sufficient Evidence Was Adduced That Defendant Committed the Instant Offense for the Benefit of the Gang and With the Specific Intent to Promote or Assist.the Gang*

Defendant contends there was no proof the shooting was done with the intent to promote, further or assist criminal conduct by Southside. This is also belied by the evidence. Defendant drove to a location in Highland Street territory. Expert testimony established that Hispanic gangs are extremely territorial; venturing onto another gang's "turf" is done at great risk. A car parked in front of the Costa residence belonged to Guillermo Briseno, also known as "Rambo," who had recently been involved in the shooting of a Southside gang member. In the culture of gangs, such an incident could not go unavenged and would warrant a retaliatory strike. This constituted sufficient evidence that defendant's actions were done with the intent to aid and promote Southside.

Defendant cites two cases which found insufficient evidence to show criminal gang conduct within the meaning of section 186.22. (*In re Lincoln J., supra,* 223 Cal.App.3d 322; *In re Leland D., supra,* 223 Cal.App.3d 251.) He does not claim, nor do we find, that these cases involved facts analogous to those here. He also cites the case law involving conspiracy and argues that body of law is apposite. He refers primarily to those conspiracy cases which found insufficient evidence of an "agreement." However, section 186.22

---

[8]The certified copies of the convictions, combined with the recitation of the facts surrounding those crimes, supplied proof of the "who, when, where and under what circumstances . . ." found lacking in *In re Leland D.* (1990) 223 Cal.App.3d 251, 259 [272 Cal.Rptr. 709]. The predicate offenses were established by specific expert testimony and certified conviction records, not by "vague, secondhand testimony . . . ," as occurred in *In re Nathaniel C., supra,* 228 Cal.App.3d at page 1003. The predicate offenses were factually and temporally distinct, and thus occurred, as is required, on separate occasions. (See *In re Jose T.* (1991) 230 Cal.App.3d 1455, 1462-1464 [282 Cal.Rptr. 75].)

does not require any sort of agreement between gang members. The elements of conspiracy are not the same, and we are unconvinced the conspiracy cases cited are of any benefit to defendant.

IV-VIII*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

CONCLUSION

The stay is removed from the enhancement imposed for the personal use of a firearm (§ 12022.5) in count I, and the enhancement imposed for discharging a weapon from a vehicle causing great bodily injury (§ 12022.55) attendant to that count is ordered stricken. The enhancements imposed for the personal use of a firearm (§ 12022.5) in counts III, IV and V are ordered stricken, and the consecutive sentence imposed in count VII is ordered stayed per section 654. (§ 1260.) The superior court clerk is directed to modify the abstract of judgment accordingly and transmit it to the Department of Corrections and other appropriate agencies. In all other respects, the judgment is affirmed.

Crosby, Acting P. J., concurred.

**WALLIN, J.**—I concur in the result only, making the following observations about the majority opinion.

I[1]

Much of the officers' "expert" testimony was rank regurgitation of hearsay coming from highly unreliable sources—rival gang members. The majority opinion glosses over this fact, but should not. However, any error was harmless. Sufficient information was from personal observations or reliable sources,[2] and it is not likely the verdict would have differed without the improper matter. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Similarly, it was error to allow the testimony on such ultimate issues as Gamez's gang membership and whether Southside is a criminal street gang.

---

*See footnote, *ante*, page 957.

[1]Pursuant to California Rules of Court, rule 976(b), part II of the concurring opinion is not published.

[2]For this reason, I also would find the evidence sufficient to show Southside was a criminal street gang.

Once the jury had the benefit of the officers' expertise on how such gangs operate, their symbols, and other topics, the jurors were as able as the officers to decide the ultimate issues. (See *People* v. *Brown* (1981) 116 Cal.App.3d 820, 829 [172 Cal.Rptr. 221].) But this error was also harmless because it is not probable it affected the verdict.

I disagree with the majority opinion's conclusion that circumstantial evidence was not a large part of the prosecution case. Although the identification of Gamez was direct evidence, much of the *admissible* evidence showing his gang membership, the criminal street gang status of Southside, and his intent in doing the acts was circumstantial. The jury should have been instructed on circumstantial evidence. However, it is not reasonably likely the verdict would have differed had instructions been given.

II*

. . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote 1, *ante*, page 979.