Filed 12/1/14  P. v. Velasquez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>YONI VELASQUEZ,<br><br>　　Defendant and Appellant. | G048172<br><br>(Super. Ct. No. 10CF1250)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　　　\*　　　　　\*

A jury convicted Yoni Velasquez of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)); all further references are to this code unless noted), unlawful driving or taking a vehicle (Veh. Code, § 10851, subd. (a)), and active participation in a criminal street gang (§ 186.22, subd. (a) [street terrorism]). The jury also found two penalty enhancements applied: defendant committed the offenses for the benefit or in association with a criminal street gang (§ 186.22, subd. (b)(1)), and he vicariously used a firearm in committing the robbery (§ 12022.53, subds. (b), (e)(1)). Defendant challenges the sufficiency of the evidence to support the gang enhancements, and he argues the trial court erroneously allowed the gang expert to testify he was an active participant in the Orange Varrio Cypress criminal street gang (OVC gang). These challenges are without merit, and we therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Defendant and a fellow OVC gang member, Javier Esparza, pulled up in a stolen black Infiniti sedan alongside Jose Velez as he walked toward his son's elementary school. When Esparza opened the passenger door and challenged Velez, "Where are you from," Velez hastened to explain he was not a gang member by stating, "Not from here, nowhere. I just moved with my wife right here [a] couple months ago" and "I don't [gang] bang." Esparza pulled a gun from under his sweatshirt, cocked it and pointed it at Velez, demanding cash. Velez had none, prompting Esparza to demand, "What do you have," and Velez produced his Nokia cell phone, which Esparza handed to defendant in the driver's seat. Velez estimated the duo were in their late 20's; he noticed defendant wore a black cap, defendant and Esparza both wore blue gloves, and he noticed orange paint splatter in the front passenger compartment. Defendant immediately made several calls with Velez's phone, identifying himself by his gang moniker, "Clown," when the calls connected.

2

Meanwhile, Esparza continued speaking with Velez, variously demanding money again, suggesting they should go to Velez's home, and then he added he could sell Velez a stereo and a ladder. At some point, a woman walked by, and Esparza warned Velez, "Don't say nothing," which frightened Velez. Esparza rebuffed Velez's request to leave, but assured him they would return his phone and let him go when they finished their calls. When defendant ended a final call, he suggested to Velez they could sell him some speakers and insisted he walk to the trunk to view them, but as Velez neared the open trunk, defendant and Esparza sped away.

Within a few minutes, as Velez walked to his son's school, defendant and Esparza drove past him and Esparza yelled, "Sucker, we got your phone." Once at the school, Velez called 911 with a partial license plate number, and a responding officer noticed the black Infiniti pass him. The officer lost sight of the vehicle, but later observed it parked at a curb, where defendant approached it and opened the driver's side door. But when defendant noticed the officer, he fled on foot and the officer while in pursuit saw defendant turn his upper body back toward him. Believing defendant was armed, the officer fired a shot, which struck defendant in the foot. Defendant nevertheless scrambled over a wall and continued running until another officer apprehended him.

Investigators found defendant's DNA matched samples taken from the Infiniti's steering wheel, gear shift, and the interior driver's side door handle. The Infiniti had been stolen three days earlier. Defendant's DNA also matched samples recovered in blood drops and on a white shoe in the vicinity of the officer's foot pursuit, and the police also located blue gloves and a black hat along that route, all of which yielded DNA samples matching defendant's. Inside the Infiniti, the investigators found a can of orange spray paint, a towel covered in orange paint, a Samsung cell phone, and two gray hooded sweatshirts, with a rusted gun barrel inside one of the sweatshirt pockets. None of the

3

items belonged to the vehicle's owner. The investigators also noticed orange discoloration along the floor in the Infiniti's front passenger compartment.

The prosecution's gang expert, Detective Miguel Cuenca, testified OVC is a criminal street gang that uses the colors orange, black, and tan to identify itself, and accordingly its members often wear the clothing of sports teams that include those colors, like the Chicago Bears and Baltimore Orioles. Investigators found an orange Baltimore Orioles baseball cap in a search of defendant's home, and also found written material referring to the OVC gang by pseudonyms including "Old Town Orange" and "Los Creepers." The gang expert explained OVC's primary activities included assault with a deadly weapon, illegal firearm possession, and the sale of methamphetamine. The expert explained gang phenomena like the use of spray painted graffiti to claim gang territory, members' obligation to "put[] in work" for the gang by sporting gang colors to manifest the gang's community presence, committing crimes and using weapons to intimidate others, and contributing "taxes" to the gang in the form of money, drugs, or guns, or by dedicating stolen property or vehicles to uses benefiting the gang. The expert also explained that a "hit-up" is a verbal or physical challenge instigated by gang members that instills fear in communities plagued by gangs because it signals a high potential for violence. A hit-up is often made with the verbal challenge, "Where are you from?"

II

DISCUSSION

I.    *Substantial Evidence Supports the Gang Enhancements*

Defendant challenges the sufficiency of the evidence to support the jury's conclusion he committed the driving and robbery offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)). But it is enough, even without the evidence defendant used the stolen vehicle to accost the victim at gunpoint and stole his cell phone to make calls in which he identified himself by his gang moniker, that he committed the offenses "in association with" (*ibid*.) Esparza, another established OVC member. (*People v.*

4

*Albillar* (2010) 51 Cal.4th 47, 62 (*Albillar*).)  The prosecution need not establish that the underlying felony benefits the gang, but only that the defendant committed the offense in association with fellow gang members.  (*Ibid.*; see, e.g., *People v. Ochoa* (2009) 179 Cal.App.4th 650, 661, fn. 7 [evidence sufficient for gang enhancement when defendant commits offense in association with fellow gang member].)

Relying on *People v. Ramon* (2009) 175 Cal.App.4th 843 (*Ramon*), defendant argues the mere fact two gang members commit an offense together does not establish the gang enhancement applies.  (*Id.* at p. 853 [no gang benefit shown where charged offense was not among gang's usual activities]; see also *Albillar*, *supra*, 51 Cal.4th at p. 62 [recognizing "'it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang'"].)  But *Ramon* has been aptly criticized for ignoring the association prong of the benefit enhancement.  (*Ochoa*, *supra*, 179 Cal.App.4th at p. 661, fn. 7 [observing that the defendant in *Ramon* acted in association with his gang when he drove a stolen vehicle with a fellow gang member].)

True, the perpetrators must associate "together *as gang members*" for the enhancement to apply (*Albillar*, *supra*, 51 Cal.4th at p. 62, original italics), but the hit-up here preceding the robbery amply illustrated the duo's gang purpose.  Defendant suggests the standard "where are you from" gang challenge "has an innocent interpretation," presumably as an innocuous question, but under the governing standard of review on appeal, we must view the record in the light most favorable to the judgment below.  (*People v. Elliot* (2005) 37 Cal.4th 453, 466.)  The test is whether a rational trier of fact could reach the verdict on the evidence presented (*People v. Johnson* (1980) 26 Cal.3d 557, 577), not whether the appellate panel is persuaded the defendant is guilty beyond a reasonable doubt.  (*People v. Crittenden* (1994) 9 Cal.4th 83, 139.)  The fact that circumstances can be reconciled with a contrary finding does not warrant reversal of the judgment.  (*People v. Bean* (1988) 46 Cal.3d 919, 932–933.)  Consequently, an appellant

5

"bears an enormous burden" in challenging the sufficiency of the evidence. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.) Defendant does not meet that burden here; to the contrary, the evidence amply supports the jury's true finding on the gang enhancements.

II.      *No Error in Allowing Expert Opinion on Defendant's Active Gang Membership*

Defendant contends the trial court erred in overruling his motion to preclude the gang expert from opining whether defendant was an active OVC gang member. The gang expert testified "Mr. Velasquez was an active participant and member of the Orange Varrio Cypress criminal street gang," and furnished as foundation for his opinion the "facts of the case, the entire background which consists of 11 STEP notices,[1] one F[ield] I[nterview card], and I believe it was 15 reports [concerning defendant's gang and criminal activities]. My interview with his family members . . . . And other OVC gang members who told me that his moniker was Payaso ["Clown" in Spanish]. And interviews with confidential informants. And my personal knowledge of OVC."

Defendant argues the expert's testimony was inadmissible because "it did nothing more than inform the jury that it should find [him] guilty of the substantive gang participation count." But expert testimony is "not tantamount to an opinion of guilt" where there are other elements to the charge or enhancement. (*People v. Valdez* (1997) 58 Cal.App.4th 494, 509 (*Valdez*).) That is the case here. The street terrorism offense defined in section 186.22, subdivision (a), requires not only active participation in a criminal street gang, but also "knowledge that its members engage in or have engaged in a pattern of criminal gang activity" and "willful promotion, furtherance, or assistance in

---

[1]      A Street Terrorism Enforcement and Prevention (STEP) notice informs suspected individuals that the police believe they associate with a criminal street gang, and warns of the enhanced penalties for gang offenses. Field Interview cards similarly document police contact with suspected or admitted gang members.

any felonious criminal conduct by members of that gang." (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130.)

Moreover, "'[t]here is no hard and fast rule that [an] expert cannot be asked a question that coincides with the ultimate issue in the case.'" (*Valdez*, *supra*, 58 Cal.App.4th at p. 507.) The Evidence Code expressly permits such questions. (Evid. Code, § 805.) Of course, an expert may not opine on a defendant's guilt, but "[t]he reason for this rule is not because guilt is the ultimate issue of fact for the jury . . . . 'Rather, opinions of guilt or innocence are inadmissible because they are of no assistance to the trier of fact. To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt.' [Citation.]" (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 77.)

In contrast, opinions on discrete issues or elements are permissible concerning subjects "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801.) Thus, a gang expert properly may testify "about a wide range of issues" that include gang concepts of territory and retaliation, the meaning of graffiti, hand signals, tattoos, and typical clothing (see, e.g., *People v. Williams* (2009) 170 Cal.App.4th 587, 609) and a particular defendant's gang membership and active participation (*Valdez*, *supra*, 58 Cal.App.4th at p. 506).

As *Valdez* explained, "gangs are not public and open organizations or associations like the YMCA or State Bar Association, which have a clearly defined and ascertainable membership. Rather, gangs are more secretive, loosely defined associations of people, whose involvement runs the gamut from 'wannabes' to leaders." (*Valdez*, *supra*, 58 Cal.App.4th at pp. 506-507.) Accordingly, "determining whether someone is involved [in a gang] and the level of involvement is not a simple matter and requires the accumulation of a wide variety of evidence over time and its evaluation by those familiar with gang arcana in light of pertinent criteria." (*Ibid.*) Defendant asserts *Valdez* rests on unique circumstances involving an attack by multiple gangs, but that distinction pertained

to the propriety of the expert's opinion the offense was for the benefit of the gangs involved. (*Valdez*, *supra*, at pp. 508-509.) A defendant's active participation in his or her own gang is well-established as a proper subject for expert testimony. (*Id.* at p. 506, citing *People v. Champion* (1995) 9 Cal.4th 879; *People v. Gamez* (1991) 235 Cal.App.3d 957, 964, disapproved on another ground in *People v. Gardeley* (1996) 14 Cal.4th 605, 624, fn. 10.) Consequently, defendant's challenge is without merit.

## III

## DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.