Filed 7/13/15  P. v. Zamora CA2./5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTONIO ZAMORA,<br><br>    Defendant and Appellant. | B252110<br><br>(Los Angeles County<br>Super. Ct. No. YA081619) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven R. Van Sicklen, Judge.  Affirmed as modified with directions.

Gail Harper, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, and Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Antonio Zamora, of second degree murder (Pen. Code, § 187, subd. (a))[1] with criminal street gang and firearm use enhancements. (§§ 186.22, subd. (b)(1)(C), 12022.53, subd. (d).) We modify defendant's sentence to delete the section 186.22, subdivision (b)(1)(C) 10-year enhancement. We affirm the judgment in all other respects.

# II. BACKGROUND

## A. The Shooting

On April 18, 2010, defendant and a fellow gang member, Luis Ramirez, appeared uninvited at a baptism party. The party was being held within the neighborhood claimed by their gang. Defendant and Mr. Ramirez helped themselves to beer. After approximately one hour, someone asked defendant and Mr. Ramirez to leave.

Edgar and Marcos Guevara and their friend, Pedro Mendoza, were invited guests.[2] Edgar and Marcos are brothers. None of the three were gang members. Mr. Mendoza is the victim in this case. Edgar saw defendant arrive at the party. Edgar recognized defendant as they had met on several occasions. On one of those prior occasions, defendant said he was a gang member. On another occasion, defendant yelled out his gang affiliation during a fistfight. Edgar testified that when defendant and Mr. Ramirez first arrived at the party at the party, they looked around and stared at everyone. Another invited guest, Noelia Maldonado, testified she was afraid of defendant and Mr. Ramirez because they were gang members.

---

[1]  Further statutory references are to the Penal Code unless otherwise noted.
[2]  Because Edgar and Marcos have the same surname, to avoid confusion, we will refer to them by their first names.

Marcos and Mr. Mendoza left the party near midnight. Defendant and Mr. Ramirez left the party a few seconds later. Marcos and Mr. Mendoza walked to the corner. Marcos went across the street and behind a van to relieve himself. Upon stepping back into the street, Marcos saw defendant and Mr. Ramirez with Mr. Mendoza. Mr. Mendoza was bent over. Mr. Mendoza's head was in defendant's chest area. Defendant's arms were over Mr. Mendoza's back. The two men were face to face and struggling with each other. Mr. Ramirez was standing behind defendant. Marcos said, "Hey," and the three men turned towards him. Defendant released Mr. Mendoza. Defendant and Mr. Mendoza traded punches. As Marcos crossed the street towards them, defendant pulled out a gun. Mr. Mendoza ran about six feet away from defendant and looked back. Marcos saw defendant aiming the gun at Mr. Mendoza. Mr. Mendoza put his hands out as he was running and said, "If you're going to shoot, shoot." Defendant shot Mr. Mendoza once, in the chest. The bullet pierced Mr. Mendoza's heart and passed through his left lung, killing him. Mr. Ramirez said, "Run." Defendant and Mr. Ramirez ran away together.

Evidence of the combatants' size relative to each other was introduced at trial. Mr. Mendoza was 5 feet, 3 to 4 inches tall and weighed 120 to 140 pounds. Defendant was five 5, 10 inches tall and weighed 200 pounds.


B. The Parties's Theories of the Case


The prosecution's theory of the case was that defendant and Mr. Ramirez, both gang members, appeared at the party uninvited in an act of intimidation. This was a tactic the gang used to maintain its hold on the community. Later, defendant encountered Mr. Mendoza. Thereupon, Mr. Mendoza "disrespected" defendant. Mr. Mendoza threw punches at defendant. Also, Mr. Mendoza taunted defendant. Mr. Mendoza did not exhibit fear of defendant. Having been disrespected in front of a fellow gang member, defendant was obligated, under an unwritten gang mandate, to retaliate violently. Failure to do so would diminish defendant's standing in the gang. Failure to do so would

3

diminish the gang's reputation in the community. And, failure to do so would result in defendant being punished or disciplined by his fellow gang members.

The defense theory of the case was that this was a personal altercation between two men, unrelated to the gang. Defendant, while at the party, had danced with a young lady named Jennifer Perez. Ms. Perez was Mr. Mendoza's current or former girlfriend. That defendant had danced with Ms. Perez upset Mr. Mendoza and led to the subsequent confrontation between the two men. Further, because it was personal, Mr. Ramirez did not get involved.

## C. The Investigation

Law enforcement officers executed a search warrant at defendant's home on April 26, 2010. When they announced their presence, defendant tried to escape through a back door. Detectives Mitchell Loman and Brandt House interviewed defendant at the Lennox Sheriff's Station on April 27, 2010, nine days after Mr. Mendoza was killed. Initially, defendant admitted he was a gang member, that he crashed the baptism party and that he "danced with a girl." But defendant denied shooting Mr. Mendoza. When asked who the girl was, defendant said: "You know what girl. You was talking to her. . . . I seen your car . . . one of y'all fools . . . parked at her house." Defendant admitted hearing Ms. Perez was Mr. Mendoza's former girlfriend. But defendant said Ms. Perez told him she did not have a boyfriend. Eventually, defendant admitted having an altercation with Mr. Mendoza. Defendant described Mr. Mendoza as the aggressor. Defendant said, "That fool did disrespect me though," and "[H]e looked at me dancing with her, you know, so." Defendant described Mr. Mendoza as "tripping." Defendant said, "That fool was all sprung over her." Defendant described encountering Mr. Mendoza outside the party: "[W]e left and that's when he seen me outside he was mad, he was talking, he told me something like . . . he was all big and bad, you know. And he head-butted me and shit . . . . ." As a result of the head butt defendant's front tooth and a bottom one were chipped. Defendant told the detectives he felt his teeth "shattering." And then defendant related:

4

". . . I was in his face, I was gonna hit him because he head butted me, but he told me I was a bitch and he told me in Spanish, 'Oh, you a bitch, and you know you with that little girl, that's my girl.' I'm like . . . 'dog, I don't want you girl, I was just dancing with her, dog,' so, and then he head butted me and I'm like what the fuck? He was drunk, too, you know, and I'm like what the fuck[.] I mean I wasn't gonna hit him but after he head butted me I was gonna fight him." After the head butt, according to defendant, things "got out of hand." Defendant pulled out what he called "a deuce five." Defendant said Mr. Mendoza ran. When Mr. Mendoza was 10 to 20 feet away, defendant fired one shot. And then defendant "just took off." Defendant said, "[H]e was facing me [when I shot him]." Defendant asked the detectives, "So, what, is it gonna be self-defense or what?"

Contrary to defendant's version of the events, there was no evidence Mr. Mendoza was under the influence of alcohol or drugs. Also contrary to defendant's story, there was evidence at trial nobody saw him dance with Ms. Perez. Prior to trial, Noelia Maldonado told detectives she saw either defendant or Mr. Ramirez dancing with Ms. Perez. At trial, however, testifying for the defense, Ms. Maldonado denied seeing either defendant or Mr. Ramirez dancing with Ms. Perez. Further, as noted, defendant testified Mr. Mendoza was angry. This allegedly occurred because he danced with Ms. Perez. Edgar and Marcos both testified they did not see defendant argue or fight with anyone at the party. Moreover, according to Edgar, Mr. Mendoza was not angry at the party. Marcos testified: Mr. Mendoza was happy; Mr. Mendoza was not angry or upset; and Mr. Mendoza's mood did not change when defendant arrived at the party. When he left the party, Mr. Mendoza was not angry or upset. At no time did Marcos hear Mr. Mendoza arguing with defendant.


D.  Testimony Concerning Criminal Street Gangs


Detective Arevalo testified for the prosecution. Detective Arevalo had 14 years of experience as a law enforcement officer. Detective Arevalo had more than 5 years of experience as a gang detective operating in the area claimed by defendant's gang.

5

Detective Arevalo testified as follows: consistent with gang culture generally, defendant's gang's existence turned on fear and respect; gang members sought respect within the gang and in the community; and the gang cultivated fear in the community. Detective Arevalo described defendant as an active gang member at the time of the crime. Defendant had gang tattoos, which demonstrated his allegiance to the gang. Gang graffiti in the neighborhood included defendant's gang alias. And defendant's MySpace page contained photographs of him with fellow gang members making gang signs. According to Detective Arevalo: defendant's gang regularly committed crimes, including, occasionally, murder; members normally committed crimes in pairs; this allowed each to serve as both backup and as a witness to the other's deeds; and one way in which defendant's gang exerted its dominance in the community was by attending nongang parties uninvited.

Defendant's Latino gang had ties to the Mexican Mafia. The Mexican Mafia maintains an unwritten mandate or "standing order" common to all Latino gangs under its umbrella. That unwritten mandate requires that if a gang member is disrespected, he must retaliate with violence. And the failure to do so will result in punishment or discipline by the gang. A failure to respond to disrespect also diminishes a member's stature within the gang. Conversely, the more violent the response, the greater the respect earned.

In response to hypothetical questions tracking the facts of this case, Detective Arevalo testified the shooting was committed for the benefit of defendant's gang. Detective Arevalo reasoned as follows. Even if the fight started over a young woman, the gang member who shot Mr. Mendoza was disrespected by a nongang member. And this affront occurred in the presence of a fellow gang member. If the person who fired the shot did not retaliate, the gang would punish him. As noted, defendant's gang operated under the aegis of the Mexican Mafia where this form of retaliation is mandatory.

Martin Flores testified on the defense's behalf concerning criminal street gangs. Mr. Flores was a member of the superior court's gang expert panel. Mr. Flores also ran a

6

youth center in Watts. Mr. Flores viewed one of defendant's MySpace photographs. The photograph depicted defendant with Alexander Tapia, a known "shot-caller" for the gang. Mr. Flores described Mr. Tapia as a neighborhood legend, the equivalent of a celebrity. Mr. Flores agreed with Detective Arevalo's testimony concerning the Mexican Mafia has an unspoken edict concerning responding to disrespect with violence or facing the consequences of the failure to do so. Mr. Flores described the potential consequences as including a "beat down," isolation for a period of time or being required to execute a mission. Mr. Flores disagreed, however, based on a hypothetical inquiry, that the crime was committed to benefit the gang of the person who fired the fatal shot. Mr. Flores testified it was a personal conflict only.

## III. DISCUSSION

### A. The Gang Enhancement Allegation was Properly Charged

#### 1. Defendant's contention

Defendant argues the gang enhancement allegation was twice dismissed and, under section 1387, subdivision (a) could not be refiled. We disagree. The gang enhancement allegation could properly be the subject of a finding it was true.

#### 2. Procedural background

##### a. case No. YA077906

On April 29, 2010, a complaint was filed charging defendant with murder committed for the benefit of a criminal street gang. On January 21, 2011, following a preliminary hearing, a magistrate held defendant to answer on the murder charge, but dismissed the gang enhancement allegation under section 871. On February 1, 2011, the

7

prosecutor filed an information charging defendant with murder together with the gang enhancement allegation. On defendant's subsequent section 995 dismissal motion, a judge, agreeing with the magistrate, dismissed the gang enhancement allegation. The prosecutor, after obtaining an unfavorable indicated ruling on gang evidence admissibility, dismissed the case.

### b. case No. YA081619 (the present case)

On July 7, 2011, the prosecutor charged defendant by complaint in the present case with murder committed for the benefit of a criminal street gang. The prosecutor also filed a peremptory challenge against the magistrate who had ruled adversely to the prosecution on the gang enhancement allegation in case No. YA077906. A preliminary hearing was held before a different magistrate. We express no opinion as to whether the first magistrate could properly be the subject of a peremptory challenge. At the conclusion of the second preliminary hearing, defendant moved to dismiss the gang enhancement allegation on both insufficient evidence and successive prosecution grounds. The magistrate denied defendant's motion. The magistrate held defendant to answer on both the murder charge and the gang enhancement allegation. On August 9, 2012, the prosecutor charged defendant by information. Defendant's subsequent motion to dismiss the gang enhancement allegation on grounds it had been twice litigated was denied.

### 3. The Allegation Could Properly Be Refiled

Defendant argues section 1387, subdivision (a) barred further prosecution of the gang enhancement allegation. Preliminarily, we disagree with the Attorney General's assertion defendant forfeited this argument by failing to cite section 1387, subdivision (a) in the trial court. Defendant specifically argued the gang enhancement allegation had been twice dismissed and was therefore barred. This was sufficient to preserve the claim.

8

Defendant's argument fails, however, on the merits. Our reasoning turns on two statutes, sections 739 and 1387, subdivision (a). Section 739 provides that once a defendant has been held to answer on a complaint, the prosecutor must file an information in the superior court. In addition, section 739 states, in part "[I]t shall be the duty of the district attorney . . . to file . . . an information . . . which may charge the defendant with either the offense or offenses named in the order of commitment *or any offense or offenses shown by the evidence taken before the magistrate to have been committed.*" (Italics added.) In other words, section 739 authorizes the prosecutor to file an information charging a transactionally-related matter that was not included in the magistrate's commitment order but was supported by the preliminary hearing evidence. (*People v. San Nicolas* (2004) 34 Cal.4th 614, 653-654 & fn. 8; *People v. Slaughter* (1984) 35 Cal.3d 629, 633.) Section 1387, subdivision (a) limits successive prosecutions. (*People v. Traylor* (2009) 46 Cal.4th 1205, 1212; *Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1016-1018.) Section 1387, subdivision (a) provides, with exceptions not applicable here: "(a) An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony . . . and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995 . . . ." An "action" within the meaning of section 1387, subdivision (a) includes an enhancement. (*People v. Carreon* (1997) 59 Cal.App.4th 804, 805-810; cf. *Ramos v. Superior Court* (1982) 32 Cal.3d 26, 34 [special circumstance allegation].) Here, the action, that is, the enhancement allegation, was terminated only once—when defendant's section 995 motion was granted. (*People v. Superior Court (Martinez)* (1993) 19 Cal.App.4th 738, 745-746; compare *Ramos v. Superior Court, supra,* 32 Cal.3d at pp. 35-36; *Bodner v. Superior Court* (1996) 42 Cal.App.4th 1801, 1802-1806; *Dietrick v. Superior Court* (2013) 220 Cal.App.4th 1472, 1474-1477.) The first action, case No. YA077906, was the first and only termination of the action within the meaning of section 1387, subdivision (a). There was no second termination of the enhancement allegation within the meaning of section 1387, subdivision (a). As Division Four of the Court of Appeal for this appellate district held in *People v. Superior Court*

*(Martinez), supra,* 19 Cal.App.4th at page 745: "[T]he magistrate's dismissal under section 871 at the preliminary hearing does not terminate the action. The action continues [when the prosecution files] an information . . . under the same case number pursuant to section 739. . . . The action is terminated when the superior court dismisses the [action] pursuant to section 995." (See *Berardi v. Superior Court* (2008) 160 Cal.App.4th 210, 219.) Therefore, the prosecutor was authorized to charge the gang enhancement allegation in the present case. (§ 739; *Berardi v. Superior Court, supra,* 160 Cal.App.4th at pp. 219-227; *People v. Superior Court (Martinez), supra,* 19 Cal.App.4th at pp. 745-746.)

B. The Trial Court Did Not Abuse its Discretion When it Denied Defendant's Motion to Bifurcate Trial of the Gang Enhancement Allegation

Defendant challenges the trial court's denial of his motion to try the criminal street gang enhancement allegation separate from the underlying offense. Evidence of gang affiliation, activity and culture may be introduced where relevant to prove, for example, identity, motive or intent. (*People v. McKinnon* (2011) 52 Cal.4th 610, 655; *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 (hereafter, *Hernandez, supra*); *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1550.) Our Supreme Court has held: "Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. [Citations.]" (*Hernandez, supra,* 33 Cal.4th at p. 1049; see *People v. Mendoza* (2000) 24 Cal.4th 130, 178.) Nevertheless, a trial court has discretion to bifurcate trial of the criminal street gang enhancement allegation to avoid undue prejudice to the defendant. (*Hernandez, supra,* 33 Cal.4th at pp. 1048-1050; cf. *People v. Calderon* (1994) 9 Cal.4th 69, 72 [prior conviction enhancement].) Our review is for an abuse of discretion. (*Hernandez, supra,* 33 Cal.4th at p. 1048; *People v. Arauz* (2012) 210 Cal.App.4th 1394, 1403.)

10

There was no abuse of discretion in the present case. The gang evidence was intertwined with the facts of the case. It was relevant to all of the circumstances surrounding the charged offense including defendant's motive and intent in shooting Mr. Mendoza. Their encounter occurred in the first place only because defendant appeared uninvited to a nongang party in his gang's territory. Defendant did so in an effort to intimidate community members and maintain the gang's stature. Without abusing discretion, the trial court could find the gang evidence was necessary to explain why defendant shot Mr. Mendoza. Moreover, the evidence explained why defendant shot Mr. Mendoza, who was running away. As defendant, an admitted gang member, told the detectives, "That fool did disrespect me though." Mr. Mendoza's "disrespect" occurred in defendant's own gang territory. And it occurred in the presence of defendant's fellow gang member. The gang culture evidence helped to explain the significance of those facts, including defendant's reference to "disrespect" in his confession. (See *People v. Hernandez, supra,* 33 Cal.4th at pp. 1048-1051; *People v. Gonzalez* (2012) 210 Cal.App.4th 724, 737-738; *People v. Funes* (1994) 23 Cal.App.4th 1506, 1518; *People v. Martin* (1994) 23 Cal.App.4th 76, 80-82.) For the foregoing reasons, there was no violation of defendant's due process or fair trial rights. (See *People v. Valdez* (2012) 55 Cal.4th 82, 134; *People v. Carter* (2003) 30 Cal.4th 1166, 1196.)

## C. Detective Arevalo's Opinion Could Properly Be Admitted and Relied Upon by the Jury

### 1. Defendant's argument

In a series of interrelated arguments, defendant challenges Detective Arevalo's testimony on multiple grounds. Defendant primarily contends: there was no proper foundation for Detective Arevalo's opinion; Detective Arevalo improperly offered an opinion as to defendant's state of mind; and, as a result, there was insufficient evidence to support defendant's murder conviction. A trial court has broad discretion to admit

11

opinion testimony concerning gangs. (*People v. Ramos* (2004) 121 Cal.App.4th 1194, 1205; *People v. Valdez* (1997) 58 Cal.App.4th 494, 506.) We conclude Detective Arevalo's expert opinion could properly be admitted and relied upon by the jury.

2. There was a proper foundation for Detective Arevalo's testimony

Defendant argues there was no proper foundation for Detective Arevalo's opinion. Defendant asserts the detective's opinion rested on assumptions, conjecture and speculation. Defendant further contends: "[Detective] Arevalo based his testimony on what 'dozens' of unnamed gang members and law enforcement agencies . . . had told him about [defendant's] gang, and the content of field identification cards . . . , arrest reports and booking records. . . . [Detective] Arevalo also relied upon hearsay from gang members' girlfriends and parents." (Fns. omitted.) Defendant further asserts: "[Detective] Arevalo's testimony was largely based on facts not otherwise proved, and assumed facts contrary to those shown by the evidence. The evidence showed that this was a fight over a woman, that neither [defendant] nor [Mr.] Ramirez said anything about being gang members at the party or during the fight. Therefore, [Detective] Arevalo's testimony cannot be deemed substantial evidence."

It is well established that a properly qualified witness may present opinion testimony about gang culture including territory, membership, rules, signs, symbols, beliefs and practices, criminal enterprises and rivalries. (E.g., *People v. Xue Vang* (2011) 52 Cal.4th 1038, 1044; *People v. McKinnon, supra,* 52 Cal.4th at pp. 653-656; *People v. Gonzalez* (2006) 38 Cal.4th 932, 944; *Hernandez, supra,* 33 Cal.4th at p. 1049; *People v. Gardeley* (1996) 14 Cal.4th 605, 617.) The admissible evidence includes gang rules, practices and tactics. (E.g., *People v. Castenada* (2000) 23 Cal.4th 743, 746, 753 [robberies were typical of crimes committed to put local residents on notice of gang's control]; *People v. Cervantes* (2004) 118 Cal.App.4th 162, 168 [reasonably foreseeable someone would be shot when gang members exit car in rival gang territory carrying loaded weapons]; *In re Jose P.* (2003) 106 Cal.App.4th 458, 464-465 [intimidating note

12

aimed at victim's family was a common gang tactic], 466-467 [gang factions followed same bylaws as a certain prison gang]; *People v. Hall* (1998) 67 Cal.App.4th 128, 133 [robberies generally committed in groups of three to six gang members]; *People v. Garcia* (1998) 63 Cal.App.4th 820, 835 [throwing gang signs at rival gang member would be met by violence]; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1377 [gang member would expect violent reaction when gang names and slogans shouted out]; *People v. Roberts* (1992) 2 Cal.4th 271, 298 [gang rule that a backup must help a hit man who is having trouble with a hit]; *People v. McDaniels* (1980) 107 Cal.App.3d 898, 902 [gang member entering rival territory would expect violent confrontation].) Such an opinion could properly rest on the facts of the case together with an experienced detective's knowledge of the gang and its culture. (*People v. Albillar* (2010) 51 Cal.4th 47, 70-72; *People v. Gardeley, supra,* 14 Cal.4th at p. 619.)

The proper basis for a gang opinion include: personal observations and experience (*People v. Olguin, supra,* 31 Cal.App.4th at p. 1370; *People v. Gamez* (1991) 235 Cal.App.3d 957, 966-969, disapproved on another point in *People v. Gardeley, supra,* 14 Cal.4th at p. 624, fn. 10); unidentified informant's statements (*People v. Valdez, supra,* 58 Cal.App.4th at pp. 509-511; see *People v. Williams* (2009) 170 Cal.App.4th 587, 621); conversations with gang members (*People v. Gardeley, supra,* 14 Cal.4th at p. 620; *People v. Gonzalez, supra,* 38 Cal.4th at pp. 948-949, fn. 4; *People v. Vy* (2004) 122 Cal.App.4th 1209, 1223, fn. 9; *People v. Duran* (2002) 97 Cal.App.4th 1448, 1463; *People v. Olguin, supra,* 31 Cal.App.4th at p. 1370; *People v. Gamez, supra,* 235 Cal.App.3d at p. 967); an investigator's personal investigations of gang-related crimes (*People v. Gardeley, supra,* 14 Cal.4th at p. 620; *People v. Vy, supra,* 122 Cal.App.4th at p. 1223, fn. 9; *People v. Duran, supra,* 97 Cal.App.4th at p. 1463; *In re Ramon T.* (1997) 57 Cal.App.4th 201, 207; *People v. Olguin, supra,* 31 Cal.App.4th at p. 1370); information obtained from colleagues and other law enforcement agencies (*People v. Gardeley, supra,* 14 Cal.4th at p. 620; *People v. Williams, supra,* 170 Cal.App.4th at p. 622; *People v. Vy, supra,* 122 Cal.App.4th at p. 1223, fn. 9; *People v. Duran, supra,* 97 Cal.App.4th at p. 1463; *People v. Olguin, supra,* 31 Cal.App.4th at p. 1370; *People v.*

13

*Gamez, supra,* 235 Cal.App.3d at p. 967); field identification cards (*People v. Ruiz* (1998) 62 Cal.App.4th 234, 238-243); police reports (*People v. Gonzalez, supra,* 38 Cal.4th at p. 949; *People v. Williams, supra,* 170 Cal.App.4th at p. 622; *People v. Gamez, supra,* 235 Cal.App.3d at p. 967); photographs of a defendant with other gang members throwing gang signs (see *In re Jose P., supra,* 106 Cal.App.4th at p. 462; *People v. Vang* (2001) 87 Cal.App.4th 554, 559; *People v. Gamez, supra,* 235 Cal.App.3d at p. 967; *People v. Woods* (1991) 226 Cal.App.3d 1037, 1044); and law enforcement computer records. (See *People v. Woods, supra,* 226 Cal.App.4th at p. 1044).

Detective Arevalo rested his opinions on: conversations with gang members incarcerated in the county jail; investigations of gang-related crimes, including crimes committed by defendant's gang; daily conversations with gang members on the street; interviews with witnesses to gang-related crimes; communications with other law enforcement agencies; field identification cards; arrest reports; booking records and other law enforcement records; and conversations with gang members' girlfriends and family members. Under the authority cited above, these were all proper bases for Detective Arevalo's opinions.

### 3. Detective Arevalo could properly testify a hypothetical crime was committed to benefit a gang

Defendant challenges Detective Arevalo's testimony, in response to hypothetical questions, that the described crime was committed to benefit a gang. Opinion testimony as to whether a described crime was gang related is relevant and admissible in a case such as the one before us. (*People v. Xue Vang, supra,* 52 Cal.4th at p. 1049, fn. 5; *People v. Albillar, supra,* 51 Cal.4th at p. 63; *People v. Gardeley, supra,* 14 Cal.4th at p. 619; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1197; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 930-931.) Here, Detective Arevalo was asked to assume hypothetical facts tracking those of the present case. He then offered the opinion that the hypothetical crime was committed to benefit the gang. The detective further testified defendant and

14

Mr. Rodriguez were fellow gang members. They crashed a baptism party within the gang's neighborhood. When they entered the party, they looked around and stared at everyone. Later, defendant encountered Mr. Mendoza. In Detective Arevalo's view, Mr. Mendoza disrespected defendant in the presence of Mr. Rodriguez. As noted, defendant admitted to detectives, "That fool did disrespect me . . . ." Detective Arevalo testified: members of defendant's gang appeared uninvited at parties within its territory; this was done in order to intimidate residents and enforce the gang's hold on the community; under an Mexican Mafia edict, a gang member who is disrespected in the presence of another gang member must retaliate with violence; and if the gang member does not respond with violence, he will face discipline by the gang. Detective Arevalo articulated a rational connection between the present crime, the gang's activities and the rules motivating gang members' conduct. Detective Arevalo's explanation supported his opinion that the hypothetical crime was committed to benefit the gang. Under these circumstances, it was reasonable for the jury to conclude the present crime was committed for the benefit of defendant's gang. (*People v. Albillar, supra,* 51 Cal.4th at pp. 70-72; *People v. Gardeley, supra,* 14 Cal.4th at p. 619.)

4. Detective Arevalo did not improperly testify to defendant's state of mind

Defendant argues Detective Arevalo improperly testified to defendant's subjective state of mind. Courts of Appeal have held that a gang investigator, for example, may not offer an opinion as to a particular defendant's subjective mental state, that is, the accused's knowledge or intent. (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 647 (*Killebrew, supra*); accord, *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1197-1199.) But, even if correctly decided (see *People v. Gonzalez, supra,* 38 Cal.4th at p. 946), *Killebrew* cannot be read as barring a detective from testifying, through the use of theoretical questions, regarding a hypothetical person. (*People v. Xue Vang, supra,* 52 Cal.4th at p. 1047 & fn. 3; *People v. Spence* (2012) 212 Cal.App.4th 478, 508; *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1513-1514). Moreover, properly qualified peace

15

officers may testify about what a typical gang member would do when faced with a particular set of circumstances.  (E.g., *Killebrew, supra,* 103 Cal.App.4th at p. 652 [gang members would expect rival gang to retaliate as a result of a shooting]; *People v. Lee* (2000) 85 Cal.App.4th 706, 718-719 [retaliation is an integral function of Asian gangs]; *People v. Olguin, supra,* 31 Cal.App.4th at p. 1371 [typical gang member would expect violent confrontation after gang name shouted out].)

Here, Detective Arevalo did not testify as to defendant's knowledge or intent. Detective Arevalo did not testify that *defendant* committed the present crime for the benefit of the gang.  Detective Arevalo testified about a hypothetical person.  Moreover, Detective Arevalo merely explained how a Latino gang member would be expected to act when confronted with a specific situation.  The trial court did not abuse its discretion in permitting Detective Arevalo to so testify.

5.  Detective Arevalo did not testify that defendant committed murder and any such contention has been forfeited

Defendant argues the hypothetical questions improperly permitted Detective Arevalo to testify that defendant committed murder.  A properly qualified witness may answer hypothetical questions closely tracking the case's facts; and express an opinion as to whether the crime was committed for the gang's benefit.  (*People v. Xue Vang, supra,* 52 Cal.4th at pp. 1044-1053; *People v. Gardeley, supra,* 14 Cal.4th at pp. 618-619.) Here, the hypothetical questions were as follows:  "Under [the stated] facts, do you have an opinion about whether or not that murder was committed for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members?" and, "Let's say that . . . the reason that the male Hispanic and the . . . gang member initially started fighting was over a girl, would that change your opinion that the murder was committed for the benefit of the gang?"

16

Defendant did not object to these questions in the trial court. As a result, he forfeited his argument. (Evid. Code, § 353, subd. (a); *People v. Gutierrez* (2009) 45 Cal.4th 789, 818-189; *People v. Valdez, supra,* 58 Cal.App.4th at p. 505.) In any event, the questions properly referred to a hypothetical person and not to defendant. (*People v. Gonzalez, supra,* 38 Cal.4th at p. 946, fn.3; *People v. Xue Vang, supra,* 52 Cal.4th at pp. 1046-1049.) Hence, Detective Arevalo did not testify that *defendant* committed the crime. The hypothetical questions assumed the crime of murder had been committed. Detective Arevalo was not asked to express an opinion whether the hypothetical person had committed the crime of murder. Detective Arevalo was not asked to express any opinion as to defendant's guilt. (*People v. Ward* (2005) 36 Cal.4th 186, 210; see *People v. Torres* (1995) 33 Cal.App.4th 37, 47-48.) These questions and the responses hereto do not provide a basis for a reversal.

6. Detective Arevalo did not vouch for his investigation and any such argument has been forfeited

Defendant asserts Detective Arevalo improperly vouched for the investigation of the case when the following occurred during cross-examination: "Q. Have you ever testified that a crime was not for the benefit of, in association with a criminal street gang with the specific intent to promote the criminal activity of a gang? [¶] A. Well, I wouldn't testify to that. That's usually based on my discretion if I filed the case. If the case comes over to my desk and I read it and I investigate it and I find that it's not gang-related, I don't submit it for filing as a gang case. So I would never testify. [¶] And there's been hundreds of cases that have come across my desk where I didn't deem it to be a gang-related case. I've investigated it. I've looked at the facts. And I mean— hundreds that I've not filed as gang-related cases. [¶] So, no, Ma'am, I wouldn't—if it got to this point or to prelim, I would not never testify to a gang or a case being gang— not gang-related." Initially, defendant forfeited the present argument by failing to move to strike Detective Arevalo's answer in the trial court. (Evid. Code, § 353, subd. (a);

17

*People v. Abel* (2012) 53 Cal.4th 891, 924; see *People v. Lucas* (2014) 60 Cal.4th 153, 264.)  In any event, Detective Arevalo's answer was responsive to the question, and it did not directly refer to defendant or to the investigation of Mr. Mendoza's death.

7.  Any error concerning motive testimony was invited and is harmless

Defendant asserts Detective Arevalo improperly testified *defendant* (as opposed to a hypothetical perpetrator) had a gang motive.  Any such error, however, was invited.  (*People v. Bailey* (2012) 54 Cal.4th 740, 753; *People v. Marshall* (1990) 50 Cal.3d 907, 931; *People v. Wickersham* (1982) 32 Cal.3d 307, 330, disapproved on a different point in *People v. Barton* (1995) 12 Cal.4th 186, 201.)  When cross-examined during the present trial, Detective Arevalo was quizzed about his prior preliminary hearing testimony.  Outside the jury's presence, the prosecutor averted to a question presented to Detective Arevalo at the first preliminary hearing.  During the first preliminary hearing, the prosecution had erroneously elicited Detective Arevalo's testimony concerning *defendant's*, rather than a hypothetical person's, gang motive.  The trial court expressly observed that if defense counsel brought that testimony in for impeachment purposes, any error would be invited.  During the present trial, defense counsel then proceeded to question Detective Arevalo about the challenged testimony.  Defendant cannot not now take issue with evidence defense counsel elicited under the foregoing circumstances.  (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1139; *People v. Kovacich* (2011) 201 Cal.App.4th 863, 890, fn. 5; *People v. Williams, supra,* 170 Cal.App.4th at p. 620.)

Even if there was error, it was not prejudicial.  (*People v. Lopez* (2013) 56 Cal.4th 1028, 1085; *People v. Watson* (1956) 46 Cal.2d 818, 835.)  Defendant admitted shooting Mr. Mendoza.  There was no testimony at trial in support of defendant's claim the fight was over a young woman.  There was no evidence presented during the trial that defendant danced with Ms. Perez.  At trial, there was no evidence Mr. Mendoza was angry with defendant for dancing with Ms. Perez.  Moreover, defendant shot Mr. Mendoza through the heart.  The shooting occurred as Mr. Mendoza was running away

18

from defendant.  Any evidence concerning Detective Arevalo's testimony at the first preliminary hearing was harmless.

## 8.  There were no constitutional violations

Defendant asserts permitting the gang testimony undermined the presumption of innocence, invaded the province of the jury, and violated his Fifth, Sixth and Fourteenth Amendment rights.  For the reasons discussed above, Detective Arevalo's testimony could properly be received and there was no violation of defendant's constitutional rights. (See *People v. Lynch* (2010) 50 Cal.4th 693, 735, fn. 14, disapproved on another point in *People v. McKinnon, supra,* 52 Cal.4th at pp. 636-643; *People v. Loker* (2008) 44 Cal.4th 691, 704, fn. 7; *People v. Ward, supra,* 36 Cal.4th at p. 211.)

## D.  Defendant Has Not Established Prejudicial Judicial Bias or Misconduct

Defendant claims the trial court was biased against defense counsel and committed multiple acts of judicial misconduct.  Defense counsel never raised a judicial misconduct objection in the trial court.  Defendant has not established that an objection would have been futile.  As a result, this assertion has been forfeited.  (*People v. Rodriguez* (2014) 58 Cal.4th 587, 626; *People v. Pearson* (2013) 56 Cal.4th 393, 447.)  Even if preserved, defendant's argument fails on the merits.  Our Supreme Court has held:  "'[O]ur role . . . is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid.  Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial.'  [Citation.]" (*People v. Snow* (2003) 30 Cal.4th 43, 78; accord, *People v. Pearson, supra,* 56 Cal.4th at p. 447; *People v. Abel, supra,* 53 Cal.4th at p. 914.)  We have examined the entire record.  The trial court did sustain objections to questions defense counsel posed, but this did not amount to judicial bias or misconduct. (*People v. Pearson, supra,* 56 Cal.4th at p. 447; *People v. Guerra* (2006) 37 Cal.4th

1067, 1112.)  The trial court was not contentious and did not use harsh language.  (See *People v. Blacksher* (2011) 52 Cal.4th 769, 824-826; *People v. Snow, supra,* 30 Cal.4th at p. 78.)  Any challenged comments occurred only after the trial court's attempts, outside the jury's presence, to explain its rulings with the apparent hope defense counsel would abide by them.  (See *People v. Guerra, supra,* 37 Cal.4th at p. 1111; *People v. Snow, supra,* 30 Cal.4th at pp. 78-79.)  The trial court did not exhibit bias or engage in misconduct so as to deprive defendant of a fair trial.

### E.  The 10-Year Gang Enhancement Must be Stricken

Defendant contends and the Attorney General concedes it was error to impose a 10-year enhancement under section 186.22, subdivision (b)(1)(C).  We agree.  Defendant was convicted of second degree murder, which carries a 15-year minimum parole eligibility term under section 186.22, subdivision (b)(5).  Therefore, defendant is not subject to the section 186.22, subdivision (b)(1)(C) 10-year enhancement.  (*People v. Lopez* (2005) 34 Cal.4th 1002, 1004, 1006-1011; *People v. Fiu* (2008) 165 Cal.App.4th 360, 390; *People v. Johnson* (2003) 109 Cal.App.4th 1230, 1236-1237.)  Defendant's sentence must be modified to delete the 10-year gang enhancement.  (*People v. Lopez, supra,* 34 Cal.4th at p. 1011; *People v. Fiu, supra,* 165 Cal.App.4th at p. 400; *People v. Johnson, supra,* 109 Cal.App.4th at p. 1239.)

## IV.  DISPOSITION

The judgment is affirmed.  The sentence is modified to delete the 10-year term imposed under Penal Code section 186.22, subdivision (b)(1)(C).  The superior court clerk shall prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.

We concur:


MOSK, J.


KIRSCHNER, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.