[No. A047437. First Dist., Div. One. Feb. 11, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL GREEN, Defendant and Appellant.

694

COUNSEL

Scott F. Kauffman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney

General, Ronald E. Niver and David H. Rose, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEIN, J.**—Paul Green pled guilty to the possession of cocaine for sale (Health & Saf. Code, § 11351), theft of a vehicle (Veh. Code, § 10851), assault with a firearm (Pen. Code, § 245, subd. (a)(2)) and participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)). He was sentenced to two years in state prison (a two-year term was imposed for conviction of the cocaine charge and a concurrent two-year term was imposed for each of the remaining charges).

On appeal, Green attacks only his conviction of the charge of participation in a criminal street gang, claiming the statute is unconstitutionally vague and overbroad.

## DISCUSSION

Penal Code section 186.22, subdivision (a), of which Green was convicted, provides:

"Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in the county jail for a period not to exceed one year, or by imprisonment in the state prison for one, two, or three years."

Green argues first that specific provisions of Penal Code section 186.22 are so vague as to fail to provide notice of the conduct it intends to proscribe, permitting arbitrary enforcement. Second, he argues that the vagueness of the statute's provisions permit it to be construed to cover protected conduct, i.e., that its uncertainty renders it unconstitutionally overbroad. We conclude that the statute's terms are adequately defined, both by the statute itself and by reference to relevant common law precedent. Finding the terms of the statute to be subject to reasonable definition, we further find that, by those definitions, the statute does not endanger protected conduct.

Before addressing Green's specific complaints as to the statute's constitutionality, however, we must address a threshold issue raised by the Attorney General.

## I.

### *Green's Plea of Guilty Does Not Preclude Him From Mounting a Facial Challenge to Section 186.22*

By pleading guilty to a violation of Penal Code section 186.22, subdivision (a), Green necessarily admitted every element of the offense charged. (*In re Hawley* (1967) 67 Cal.2d 824, 828 [63 Cal.Rptr. 831, 433 P.2d 919]; *U.S.* v. *Broce* (1989) 488 U.S. 563, 570 [102 L.Ed.2d 927, 936, 109 S.Ct. 757, 759].) It follows that if section 186.22 is constitutional as to any conduct proscribed by the statute, Green's plea of guilty admits that conduct. The general rule is that "one will not be heard to attack a statute on grounds that are not shown to be applicable to himself." (*In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]: where a statute prohibited loitering in specified areas by a "pickpocket, thief, burglar or confidence operator," a person arrested as a thief was not entitled to argue that the terms "pickpocket" or "confidence operator" are unconstitutionally vague.) Thus, "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." (*Parker* v. *Levy* (1974) 417 U.S. 733, 756 [41 L.Ed.2d 439, 458, 94 S.Ct. 2547]: defendant who was court-martialed for making statements to which statute clearly applied lacked standing to challenge statute on grounds that it was unclear whether it applied to other conduct.) The Attorney General argues that it follows that Green should lack standing to challenge Penal Code section 186.22 unless there is *no* conduct to which the statute might be applied constitutionally.

The Attorney General's argument, however, presumes that Green's attack on Penal Code section 186.22 is limited to some, but not all, of the conduct covered by the statute. If the Attorney General is correct in this presumption, the argument has merit. For example, as will be discussed, Penal Code section 186.22 lists a number of offenses which it deems evidence of a "pattern of criminal conduct." By pleading guilty, Green necessarily admitted that he committed those offenses which were described with sufficient particularity, and thus would lack standing to attack the statute on the grounds that the descriptions of other offenses are vague and overbroad.

Green, however, attacks the basic provisions of Penal Code section 186.22 which, if found vague, would invalidate the entire statute. His plea therefore does not admit anything which would cause him to lack standing to make such an attack.

An argument similar to that made here by the Attorney General was rejected by the majority opinion in *Kolender* v. *Lawson* (1983) 461 U.S. 352 [75 L.Ed.2d 903, 103 S.Ct. 1855]. In that case Lawson had been arrested for

violating California Penal Code section 647, subdivision (e), making it a misdemeanor for a person to loiter or wander on the streets and fail to provide credible and reliable identification or otherwise account for his or her presence to a police officer. Lawson, however, did not challenge the statute on the basis of its application to him; rather, he sought to obtain a declaratory judgment that it was vague and overbroad in general. The majority agreed, finding that the statute's failure to define "credible and reliable" vested "virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute and must be permitted to go on his way in the absence of probable cause to arrest." (P. 358 [75 L.Ed.2d at p. 909].)

"In his dissent,[1] JUSTICE WHITE claims that '[t]he upshot of our cases . . . is that whether or not a statute purports to regulate constitutionally protected conduct, it should not be held unconstitutionally vague on its face unless it is vague in all of its possible applications.' *Post*, at 370. The description of our holdings is inaccurate in several respects. First, it neglects the fact that we permit a facial challenge if a law reaches 'a substantial amount of constitutionally protected conduct.' [Citation.] Second, where a statute imposes criminal penalties, the standard of certainty is higher. [Citation.] This concern has, at times, led us to invalidate a criminal statute on its face even when it could conceivably have had some valid application. [Citations.] The dissent concedes that 'the overbreadth doctrine permits facial challenge of a law that reaches a substantial amount of conduct protected by the First Amendment . . . .' *Post*, at 371. However, in the dissent's view, one may not 'confuse vagueness and overbreadth by attacking the enactment as being vague as applied to conduct other than his own.' *Post*, at 370. But we have traditionally viewed vagueness and overbreadth as logically related and similar doctrines." (*Kolender* v. *Lawson, supra*, 461 U.S. at pp. 358-359, fn. 8 [75 L.Ed.2d at p. 910].)

As in *Kolender*, Green's attack combines notions of vagueness and of overbreadth. *Kolender* holds that a defendant is entitled to make a facial challenge if he argues that the statute improperly prohibits a substantial amount of constitutionally protected conduct, whether or not its application to his own conduct may be constitutional.

---

[1] The dissent was of the opinion that the statute could be applied constitutionally to a defendant who had refused to provide any identification whatsoever. Noting that the challenge to the statute did not put into issue the defendant's conduct, the dissent reasoned that for all the court knew, his conduct clearly came within the statute's purview. The dissent argued, "[T]o imply, as the majority does . . . that the overbreadth doctrine requires facial invalidation of a statute which is not vague as applied to a defendant's conduct but which is vague as applied to other acts is to confound vagueness and overbreadth, contrary to *Parker* v. *Levy*." (P. 371 [75 L.Ed.2d at p. 918].) Accordingly, the dissent would have reversed and remitted to permit the defendant to challenge "the statute as it has been or will be applied to him." (P. 373 [75 L.Ed.2d at p. 919].)

## II.

### *Penal Code Section 186.22 Is Not Unconstitutionally Vague*

■ The legal principles relevant to a claim of vagueness were explained by the court in *People* v. *Superior Court (Caswell)* (1988) 46 Cal.3d 381, 389-390 [250 Cal.Rptr. 515, 758 P.2d 1046]: "That no person shall be deprived of life, liberty or property without due process of law is, of course, a cornerstone of our jurisprudence. (U.S. Const., Amends. V, XIV; Cal. Const., art. I § 7.) 'The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well established element of the guarantee of due process of law.' [Citation.] To withstand a facial vagueness challenge under the due process clause, a statute must satisfy two basic requirements.

"First, a statute must be sufficiently definite to provide adequate notice of the conduct proscribed. '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. [Citations.]' [Citations.] ' "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." ' [Citations.]

"Second, a statute must provide sufficiently definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement. 'A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. [Citation.] Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." ' [Citations.]"

As to overbreadth, it is held that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." (*NAACP* v. *Alabama* (1964) 377 U.S. 288, 307 [12 L.Ed.2d 325, 338, 84 S.Ct. 1302].)

■ That Penal Code section 186.22, subdivision (a)'s terms are not perfectly defined, or that they may not be defined precisely, does not invalidate the statute. ■ "[R]easonable certainty is all that is required. A statute will not be held void for vagueness if any reasonable and practical

construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources." (*In re Marriage of Walton* (1972) 28 Cal.App.3d 108, 116 [104 Cal.Rptr. 472].) It is settled that the fact that a term is somewhat imprecise does not itself offend the requirements of due process. " '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . . .' *United States* v. *Petrillo*, 332 U.S. 1, 7-8." (*Roth* v. *United States* (1957) 354 U.S. 476, 491 [1 L.Ed.2d 1498, 1511, 77 S.Ct. 1304].) "The law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as 'reasonable,' 'prudent,' 'necessary and proper,' 'substantial,' and the like. Indeed a wide spectrum of human activities is regulated by such terms . . . Yet standards of this kind are not impermissibly vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind." (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1128-1129 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].)

We turn to the specific provisions of Penal Code section 186.22, subdivision (a).

## A. *Active Participation and Membership*

■ The section purports to regulate persons who "actively participate" in any criminal street gang and who take specified action in relation to "members" of such a gang. Green argues that the terms "actively participates" and "members" are uncertain. The meaning of these terms is closely related; we consider them together.

"Member" and "membership" are terms of ordinary meaning, and require no further definition. (See *In re De La O* (1963) 59 Cal.2d 128, 153 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705], finding that the terms "addicted to" and "imminent danger of becoming addicted" were sufficiently certain as being of long usage or having a common law meaning; but see *Lanzetta* v. *New Jersey* (1939) 306 U.S. 451, 456 [83 L.Ed. 888, 892, 59 S.Ct. 618], discussed, *post.*) Further, "member" has been judicially defined as meaning that a person bears a relationship to an organization that is not accidental, artificial or unconsciously in appearance only. (*Galvan* v. *Press* (1954) 347 U.S. 522, 528 [98 L.Ed. 911, 920, 74 S.Ct. 737].)

■ It is settled that criminal liability may not be predicated on nothing more than membership; i.e., nothing more than some association with a group. Rather, it has been held that a "member" may not be subjected to criminal liability for the acts of the association to which he is a member unless his membership is "active," a term which has been held to be well

understood in common parlance. (*Scales* v. *United States* (1961) 367 U.S. 203, 223 [6 L.Ed.2d 782, 798, 81 S.Ct. 1469].) The court in *Scales*, for example, found "entirely adequate" an instruction that for a person's membership in the Communist Party to be criminal, "it is not sufficient that he be simply a member. It must be more than a nominal, passive, inactive, or purely technical membership. In determining whether he was an active or inactive member, consider how much of his time and efforts he devoted to the Party. To be active he must have devoted all, or a substantial part, of his time and efforts to the Party." (*Id.* at pp. 254-255, fn. 29 [6 L.Ed.2d at pp. 815-816].)

■ Penal Code section 186.22 does not make "membership" criminal; rather, under specified circumstances it makes "active participation" criminal. By using the phrase "actively participates," the California Legislature evidently sought to prevent prosecution of persons who were no more than nominal or inactive members of a criminal street gang. The phrase, in context, has the same meaning as "active membership" as defined by the case law. To be convicted of being an active participant in a street gang, a defendant must have a relationship with a criminal street gang which is (1) more than nominal, passive, inactive or purely technical, and (2) the person must devote all, or a substantial part of his time and efforts to the criminal street gang. So construed, we see little likelihood that the phrase will permit arbitrary law enforcement or provide inadequate notice to potential offenders.

Neither do we see any difficulty with the term "membership," a term which, as discussed, has an ordinary meaning and which has been defined further in the cases. It is true that the term is not susceptible of precise definition, but absolute definition is not required. The argument that "membership" is overbroad as potentially including persons who have been intimidated into membership is irrelevant. Penal Code section 186.22 does not prohibit membership; it prohibits the promotion, furtherance or assistance in any felonious criminal conduct by members. That a member may not be a whole-hearted participant in the felonious criminal conduct should have no bearing on the criminal liability of the person who promotes, furthers or assists such conduct.

Such a conclusion is not inconsistent with the holding in *Lanzetta* v. *New Jersey, supra*, 306 U.S. at page 456 [83 L.Ed. at page 892], that the phrase "known to be a member" (of any gang) is ambiguous. The court there stated, "It is ambiguous. There immediately arises the doubt whether actual or putative association is meant. If actual membership is required, that status must be established as a fact, and the word 'known' would be without significance. If reputed membership is enough, there is uncertainty whether

that reputation must be general or extend only to some persons. And the statute fails to indicate what constitutes membership or how one may join a 'gang.' " (*Id.* at p. 458 [83 L.Ed. at p. 893].) Penal Code section 186.22 does not employ the term "known"; the statute unambiguously refers to actual membership. Moreover, the complaint of the court in *Lanzetta*, that the statute fails to indicate what constitutes membership, was resolved by the cases such as *Scales*, cited above, which were decided after *Lanzetta*, and which also involved statutes failing to specify those acts by which a person might be deemed a member.[2]

### B. Criminal Street Gang

Green relies heavily on the discussion and holding of the court in *Lanzetta*. The statute at issue there, as relevant, provided, " 'Any person not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons, who has been convicted at least three times of being a disorderly person, or who has been convicted of any crime in this or in any other State, is declared to be a gangster . . .' " (306 U.S. at p. 452 [83 L.Ed. at pp. 889-890].) The court criticized the term "gang," not because it was uncertain, but because it was overbroad, finding that it was not limited in its "meaning to a group having purpose to commit any particular offense or class of crimes, or that it has not quite frequently been used in reference to groups of two or more persons not to be suspected of criminality or of anything unlawful." (P. 457 [83 L.Ed.2d at p. 892].)

In contrast to the statute criticized in *Lanzetta*, Penal Code section 186.22, subdivision (a) does not make it criminal to be a member of an undefined "gang"; it prohibits membership in a "criminal street gang," defined by subdivision (f) as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (8), inclusive, of subdivision (e),[3] which

---

[2] Indeed, the court in *Lanzetta* recognized that judicial construction of a term could save a statute. The court there noted that the New Jersey Court of Errors and Appeals in fact had defined the term "gang," a term which the *Lanzetta* court found to be overbroad. The *Lanzetta* defendants, however, had been convicted before the court of errors and appeals had ruled. "It would be hard to hold that, in advance of judicial utterance upon the subject, they were bound to understand the challenged provision according to the language later used by the court." (*Lanzetta* v. *New Jersey, supra,* 306 U.S. at p. 456 [83 L.Ed.2d at p. 892].)

[3] Subdivision (e) enumerates the following offenses:

"(1) Assault with a deadly weapon or by means of force likely to produce great bodily injury, as defined in Section 245.

"(2) Robbery, as defined in Chapter 4 (commencing with Section 211) of Title 8 of Part 1.

"(3) Unlawful homicide or manslaughter, as defined in Chapter 1 (commencing with Section 187) of Title 8 of Part 1.

has a common name or common identifying sign or symbol, whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."[4]

Although no further analysis of the term "gang" seems necessary, we note that the term is similar to that of "enterprise" used in the racketeer influenced and corrupt organizations (RICO) statutes (18 U.S.C. § 1961 et seq.). Section 1962(c) of 18 United States Code provides, "It shall be unlawful for any person employed by or associated *with any enterprise* engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." (Italics added.) The courts have had little trouble with the term "enterprise," finding that it means "a continuing core of personnel motivated by a common interest." (*U.S.* v. *Perholtz* (D.C. Cir. 1988) 842 F.2d 343, 355 [268 App.D.C. 347].) "The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct." (*United States* v. *Turkette* (1981) 452 U.S. 576, 583 [69 L.Ed.2d 246, 254, 101 S.Ct. 2524].) Penal Code section 186.22, subdivision (f)'s requirement of "ongoing organization, association, or group" has the same meaning.

## C. Knowledge of Pattern of Criminal Gang Activity

Criminal liability under Penal Code section 186.22 requires that a defendant have knowledge that the criminal street gang's members engage in a pattern of criminal conduct.

The term "knowledge" poses little difficulty. It is a term often used in the criminal law, and it means "awareness of the particular facts proscribed in criminal statutes." (*People* v. *Lopez* (1986) 188 Cal.App.3d 592, 598 [233 Cal.Rptr. 207].) Green's query, "Can knowledge be based on gossip or braggadocio?" confuses definition with proof. "Knowledge" means actual knowledge. Whether "gossip" or "braggadocio" are sufficient to impute actual knowledge is a question for the jury.

---

"(4) The sale, possession for sale, transportation, manufacture, offer for sale, or offer to manufacture controlled substances as defined in Sections 11054, 11055, 11056, 11057, and 11058 of the Health and Safety Code.

"(5) Shooting at an inhabited dwelling or occupied motor vehicle, as defined in Section 246.

"(6) Arson, as defined in Chapter 1 (commencing with Section 450) of Title 13.

"(7) The intimidation of witnesses and victims, as defined in Section 136.1.

"(8) Grand theft of any vehicle, trailer, or vessel as described in Section 487h."

[4]The only two reported cases discussing Penal Code section 186.22 have been concerned with the sufficiency of the evidence to establish that a particular gang is "engaged in a pattern of criminal gang activity." (In re Lincoln J. (1990) 223 Cal.App.3d 322, 328-330 [272 Cal.Rptr. 852]; In re Leland D. (1990) 223 Cal.App.3d 251, 258 [272 Cal.Rptr. 709].)

"Pattern of criminal gang activity" is defined in Penal Code section 186.22, subdivision (e), as "the commission, attempted commission, or solicitation of two or more of the following offenses [listed at footnote 3], provided at least one of those offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses are committed on separate occasions, or by two or more persons."

Referring again to the RICO statutes, 18 United States Code section 1962(c) employs the phrase "pattern of racketeering activity." Against a similar claim of vagueness the court in *United States* v. *Campanale* (9th Cir. 1975) 518 F.2d 352, 364, held: "[I]t is true that, if undefined, terms such as 'pattern of racketeering activity' would be unmanageable. Any ambiguity is cured by 18 U.S.C. § 1961, which defines 'racketeering activity' with reference to specific offenses, [and] 'pattern of racketeering activity' with reference to a definite number of acts of 'racketeering activity' within specified time periods." Subdivision (e) similarily defines Penal Code section 186.22's phrase, "pattern of criminal gang activity."

## D. "Willfully Promotes, Furthers, or Assists in Any Felonious Criminal Conduct"

Penal Code section 186.22 imposes no criminal liability unless a defendant "willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang." Similar phrases are not uncommon in the criminal law. CALJIC No. 3.01, restating common law principles, defines an aider and abettor of a crime as a person who "with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime."[5] The similarity of the relevant phrase in Penal Code section 186.22 with that employed in determining if a person is an aider and abettor means, we think, that the phrases should be viewed as synonymous. As the Attorney General concedes, for a person to be criminally liable under Penal

---

[5] That phrase was developed, in part, from the decision in *People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318]. "When the definition of the offense includes the intent to do some act or achieve some consequence beyond the *actus reus* of the crime [citation], the aider and abettor must share the specific intent of the perpetrator. By 'share' we mean neither that the aider and abettor must be prepared to commit the offense by his or her own act should the perpetrator fail to do so, nor that the aider and abettor must seek to share the fruits of the crime. [Citation.] Rather, an aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime. [Citations.] The liability of an aider and abettor extends also to the natural and reasonable consequences of the acts he knowingly and intentionally aids and encourages. [Citation.]"

Code section 186.22, he or she would also have to be criminally liable as an aider and abettor to any specific crime committed by a member or members of a criminal street gang. It follows that the phrase has been well defined by the courts.

Green's final complaint is of the phrase "felonious criminal conduct." The phrase does, indeed, impart some uncertainty. If it means commission of an offense amounting to a felony, it contains superfluous language. If, however, it contemplates something less than the commission of an offense amounting to a felony, it makes criminal the promotion, furtherance or assistance of conduct which is not itself criminal. Such a construction would impinge on protected conduct. Where a provision is of doubtful validity we must, if possible, impose on it a construction which eliminates doubts as to its constitutionality. (*In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142].) We therefore construe the provision to cover only conduct which is clearly felonious, i.e., conduct which amounts to the commission of an offense punishable by imprisonment in state prison.

## CONCLUSION

We are of the opinion that the statute, as we have construed it, gives reasonable notice of the conduct which it prohibits and is no more susceptible to arbitrary enforcement than any other criminal statute. While by our construction the statute in essence imposes liability for aiding and abetting the commission of a felony, and thus Penal Code section 186.22 becomes somewhat superfluous, it does not lack certainty. Furthermore, the statute carefully circumscribes the conduct to which it applies; a person cannot be made criminally liable under it unless he or she acts with the intention of promoting, furthering or assisting the commission of a felony. Penal Code section 186.22, subdivision (a) accordingly does not invade the area of protected freedoms and is not unconstitutionally overbroad.

The judgment is affirmed.

Newsom, Acting P. J., and Dossee, J., concurred.