Filed 1/14/16  P. v. Jabonero CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B254684 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA396233) |
| v. | |
| JOSE JABONERO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Larry P. Fidler, Judge.  Affirmed.

Edward Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Mary Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Jose Jabonero appeals from the judgment entered following his conviction by jury of active participation in a gang (street terrorism). (Pen. Code, § 186.22, subd. (a).)[1] The court sentenced appellant to prison for three years. We affirm.

## *FACTUAL SUMMARY*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*)), the evidence established that Rene Enriquez was a former member of the Mexican Mafia gang (MM). The parties stipulated MM was a "criminal street gang" pursuant to section 186.22. In March 2002, Enriquez left MM. Enriquez was an MM expert and frequently had qualified as such in court.

Enriquez testified as follows. MM's goal was to make money. An MM member in prison could either collect money from inmates' illegal activities or have crews on the street. Enriquez testified a crew was a criminal enterprise, a group of persons "who work specifically for you." An MM member in prison selected a crew chief, also known as a shot caller, who managed the crew. The crew chief appointed individuals beneath him in a vertical leadership structure. Enriquez, after testifying about a crew chief, testified there were "other individuals beneath your main contact guy that do collections and enforcement within the crew."

Enriquez also testified as follows. If an MM member had the phone number of a Sureno member on the street and called that member from jail to ask the member to perform certain activities, it meant the Sureno member was a highly trusted crew member working specifically for an MM member. Moreover, if the MM member directed the Sureno member to make collections from other drug dealers, this meant the Sureno member was a "highly placed member within the crew."

Enriquez knew Eulalio Martinez, an MM member. Martinez controlled the majority of territory in the San Gabriel Valley, including Lomas gang territory in the valley. Appellant was responsible for collecting from drug dealers in the valley. Enriquez had listened to recordings of telephone calls made from jail, including a May

---

[1] Subsequent statutory references are to the Penal Code.

14, 2009 telephone conversation between Martinez and appellant. During the call, the following occurred. Appellant indicated he had given to Martinez money that appellant had obtained from others. Appellant and Martinez discussed issues of control and discipline of persons, and whether a person (Gordo) was improperly taking money. Appellant told Martinez that appellant "started hitting everybody" because Martinez was "kind of weak there." Appellant indicated people did not want to "kick in" and "I barely got a bunch of homies that kick in."

Enrique testified as follows. If an MM member's subordinate told the MM member that the subordinate "started hitting everybody again to get you up there because I know you're kind of weak there," it meant to the MM member that the subordinate was extorting money from drug dealers or gang members to increase the revenue "we were bringing in." Appellant was saying he had begun committing extortion for Martinez to increase the revenue "he was bringing in."

During the call, Martinez told appellant to ask a person (Eight Ball) for a loan, and appellant replied he would "hit [Eight Ball] up." Enriquez testified that if an MM member's subordinate told the MM member that the subordinate was going to "hit somebody up," that meant the subordinate was going to extort money from the person for the MM member. During the call, Martinez told appellant that Martinez needed a loan, and appellant replied, "I'll work on that for you." The prosecutor asked what it meant to get a loan from someone in the "Mexican Mafia parliament." (*Sic*.) Enriquez testified it meant Martinez was directing appellant to have persons commit extortion for Martinez. Enriquez opined at trial that appellant was a member of the Lomas gang (a Sureno gang aligned with MM), appellant was furthering the interests of MM, and appellant "was involved in the furtherance of Mexican Mafia member conspiracies."[2]

---

[2] An indictment alleged as count 19 that, inter alia, on and between December 2007 and June 2011, appellant committed active participation in a gang (street terrorism). The jury convicted him on that count.

In defense, appellant denied committing the present offense. A sheriff's detective testified appellant was a Sureno, it was clear during the above phone conversation that Martinez was appellant's employer, and appellant was dealing drugs "under the umbrella of the Mexican Mafia."

## ISSUES

Appellant claims there is insufficient evidence "members of that gang" within the meaning of section 186.22, subdivision (a) committed felonious criminal conduct. He also presents related claims that the trial court erred by (1) instructing with CALCRIM No. 1400 that "[a]t least two gang members must have participated in committing the felony offense," (2) instructing with CALCRIM No. 1400 that conspiracy is "felonious criminal conduct" within the meaning of section 186.22, subdivision (a), and (3) failing to give a unanimity instruction regarding the targets of that conspiracy.

## DISCUSSION

1. *There Is Sufficient Evidence Appellant Was a Member of the Mexican Mafia.*

Appellant claims insufficient evidence supports his conviction. He argues there is insufficient evidence he was an MM member, therefore, insufficient evidence "members of that gang" within the meaning of section 186.22, subdivision (a) committed the requisite felonious criminal conduct. We reject his claim.

Section 186.22, subdivision (a) is part of the California Street Terrorism Enforcement and Prevention Act (STEP Act). (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1128 (*Rodriguez*).) Subdivision (a) states, in relevant part, "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and *who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang*, shall be punished . . . ." (Italics added.) Appellant concedes MM is the criminal street gang involved in the instant matter and concedes Martinez is an MM member. There is no dispute that if appellant was an MM member, then, since Martinez was too, "*members* of that gang" (italics added) within the meaning of section 186.22, subdivision (a)

4

committed felonious criminal conduct and appellant's sufficiency claim fails. The issue therefore is whether there was substantial evidence appellant was an MM "member[]."

"As to the phrase 'by members of that gang' in section 186.22(a), . . . *People v. Green* (1991) 227 Cal.App.3d 692, 699 [278 Cal.Rptr. 140] (*Green*) observed that ' "[m]ember" and "membership" are terms of ordinary meaning, and require no further definition.' " (*Rodriguez, supra,* 55 Cal.4th at p. 1131.) *Green* noted, " 'member' has been judicially defined as meaning that *a person bears a relationship to an organization* that is not accidental, artificial or unconsciously in appearance only. [Citation.] [¶] It is settled that criminal liability may not be predicated on nothing more than *membership*; i.e., nothing more than *some association with a group*." (*Green*, at p. 699, italics added.) One definition of "member" is "one of the individuals composing a society, community, association, or other group." (Webster's 3d New Internat. Dict. (1966) p. 1408.)

There was substantial evidence as follows. Appellant knew Martinez was an MM member. Appellant was a Sureno and the fact Martinez, an MM member, called appellant, a Sureno, on the phone and asked him to perform certain activities meant appellant was a highly trusted crew member working for Martinez in Martinez's capacity as an MM member. The fact that, during the phone conversation, Martinez, an MM member, directed appellant, a Sureno, to collect from other drug dealers meant appellant was a highly placed member within the crew. Appellant was effectively Martinez's employee.

The phone conversation reflects Martinez called appellant to rally appellant, a local operative at a leadership level, to rationalize operations in his territory and to ensure efficient operation of the MM's street-related operations. Indeed, the nature and content of the phone conversation support a reasonable inference appellant was high-ranking, entirely trusted, and sufficiently senior to be able to effectuate MM's directions, an inference supporting a conclusion appellant was an MM member. Appellant's membership in MM was consistent with its decentralized organization and financial operations, and MM's direction of out-of-custody operatives to generate capital.

5

We note that nothing in the STEP Act indicates a person must be formally initiated into a criminal street gang in order to be a "member[]" (§ 186.22, subd. (a)). Indeed, such a requirement would be inconsistent with the express purpose of the STEP Act, which is " ' "to seek the eradication of criminal activity by street gangs." ' " (*Rodriguez, supra*, 55 Cal.4th at p. 1129.) Moreover, this is not a case presenting merely a low-level gang member, unknown to MM, who tagged a 13 or other MM symbol. We hold there was sufficient evidence appellant was a "member[]" (§ 186.22, subd. (a)) of the Mexican Mafia and, therefore, there was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, that "members of that gang" within the meaning of section 186.22, subdivision (a) committed felonious criminal conduct and appellant actively participated in a gang. (Cf. *Ochoa*, *supra,* 6 Cal.4th at p. 1206; *People v. Hernandez* (1990) 219 Cal.App.3d 1177, 1181-1182.)

Appellant's reliance on *People v. Velasco* (2015) 235 Cal.App.4th 66, is misplaced. In dicta, *Velasco* stated, "It is not sufficient that the defendant act with a member of another gang, unless it is shown that those gangs are merely subsets of a primary gang and typically work together." (*Id.* at p. 78.) However, *Velasco's* holding was that two persons, each from a nominally different gang (e.g., in *Velasco*, one person (the defendant) from the Puente 13 gang; the other person from the 18th Street gang) did not become "members of that gang" (§ 186.22, subd. (a)) simply because each person was a gang member. *Velasco* reasoned the antecedent of the phrase "that gang" (§ 186.22, subd. (a)) was the "criminal street gang" (*ibid*.) in which the defendant actively participated, therefore, "members of that gang" necessarily referred only to members of the *same* criminal street gang.

The sufficiency analysis in *Velasco* was unique to its facts and focused on a defendant gang member acting with a member of a nominally different gang; the nature and scope of the "horizontal" relationship(s), if any, between the nominally different gangs and/or their members; and the extent to which, if at all, these nominal gangs were subsets of a primary criminal street gang. Accordingly, *Velasco* did not involve the issue presented here, namely, whether the fact appellant (a Lomas gang member) acted with a

6

member (Martinez) of a nominally different gang (MM), coupled with evidence of a "vertical" relationship between, on the one hand, appellant, and, on the other, MM member Martinez and/or MM, could provide sufficient evidence appellant was an MM member and thus appellant and Martinez were "members of that [MM] gang."

2. *The Court Properly Instructed that At Least "Two Gang Members" Had to Commit Felonious Criminal Conduct.*

The court gave the jury CALCRIM No. 1400 (Aug. 2013 rev.) (Fall 2013 ed.), the version in effect at time of trial, to instruct on the present offense. The instruction stated, in relevant part: "The defendant is charged . . . with participating in a criminal street gang in violation of Penal Code section 186.22(a). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant actively participated in a criminal street gang; [¶] . . . [¶] AND [¶] 3. The defendant willfully assisted, furthered, or promoted felonious criminal conduct by members of the gang either by: [¶] a. directly and actively committing a felony offense; [¶] . . . [¶] At least *two gang members* must have participated in committing the felony offense. The defendant may count as one of those members if you find that the defendant was a member of the gang." (Italics added.) (Unless otherwise indicated, references below to CALCRIM No. 1400 are to that instruction as given in this case.)

Appellant argues the phrase "two gang members" (hereafter, the challenged phrase) is erroneous and should have been "two members of that same gang" (e.g., the language in current CALCRIM No. 1400 (Aug. 2014 rev.) (Spring 2015 ed.)). The argument is unavailing. The challenged phrase does not expressly state whether the phrase "gang members" refers to members of the same gang and/or to members of different gangs. There is no dispute that, to the extent the challenged phrase permits the inference the challenged phrase applies to members of the same gang, no error occurred. Appellant's argument is the challenged phrase erroneously permits the inference the phrase refers to members of different gangs. Appellant did not ask the trial court to clarify the challenged phrase. He forfeited the issue of whether the challenged phrase

7

erroneously permitted the inference the phrase referred to members of different gangs. (Cf. *People v. Palmer* (2005) 133 Cal.App.4th 1141, 1156.)[3]

Even if appellant did not forfeit the issue, we note appellate review of the adequacy of instructions is based on whether the trial court fully and fairly instructed on the applicable law. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) In determining whether a trial court has erred in giving instructions, an appellate court considers the instructions as a whole and assumes jurors are intelligent persons capable of understanding and correlating all given instructions. (*Ibid.*) The question is whether there is a reasonable likelihood the jury applied the challenged instruction in an impermissible manner. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1220 (*Hajek*).)

Appellant's argument concerning the challenged phrase implicates the third enumerated element in CALCRIM No. 1400, which stated, in relevant part, "The defendant willfully assisted, furthered, or promoted felonious criminal conduct by members of *the* gang . . . ." (Italics added.) The phrase "the gang" in the instruction clearly relates back to the "criminal street gang" in which the defendant is an active participant as reflected in the first enumerated element in the instruction. (Cf. *Rodriguez, supra,* 55 Cal.4th at pp. 1130-1132 [§ 186.22, subd. (a)'s phrase "that gang" clearly

---

[3]     Appellant, citing *People v. Hillhouse* (2002) 27 Cal.4th 469 (*Hillhouse*) and section 1259, argues the challenged phrase constituted misinstruction on an element of the offense and a defendant need not object to preserve a challenge to an instruction that *incorrectly* states the law and affects the defendant's substantial rights. However, *Hillhouse* and section 1259 do not apply where, as here, appellant failed to seek *clarification* of an instruction that was *correct in law* and responsive to the evidence. (Cf. *Palmer, supra*, 133 Cal.App.4th at p. 1156.) We note the phrase "at least two gang members" was added to CALCRIM No. 1400 (Aug. 2013 rev.) (Fall 2013 ed.) (the given instruction) apparently in response to the 2012 decision in *Rodriguez*. *Rodriguez* held a gang member who commits a felony but acts *alone* is not a person "who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang" within the meaning of section 186.22, subdivision (a). (*Rodriguez, supra*, 55 Cal.4th at pp. 1128, 1139.) *Rodriguez* observed, "The plain meaning of section 186.22(a) requires that felonious criminal conduct be committed by *at least two gang members*, one of whom can include the defendant if he is a gang member. (See § 186.22, subd. (i).)" (*Rodriguez*, at p. 1132, italics added.)

8

relates back to the gang in which defendant is an active participant].) Accordingly, first, leaving aside the challenged phrase, we conclude the phrase "members of *the* gang" (italics added) in the third enumerated element itself in CALCRIM No. 1400 adequately conveyed the requirement that "members of *the criminal street gang*," that is, members of the *same* criminal street gang, commit the felonious criminal conduct.

Moreover, CALCRIM No. 1400 used the phrase "criminal street gang" five times and used the phrase "*the* gang" (italics added) eight times. The instruction nowhere expressly referred to any other gang. The references to "*the* gang" (italics added) in the instruction (like the references to "*that* gang" in the statute) unmistakably referred only to the "criminal street gang." (Cf. *Rodriguez*, *supra*, 55 Cal.4th at p. 1131.) For this additional reason, we conclude there is no reasonable likelihood the jury construed the challenged phrase as referring to members of different gangs.

Finally, appellant argues the first sentence at issue ("[a]t least *two gang members* must have participated in committing the felony offense," italics added) suggests members of different gangs may be the two or more gang members who commit the felonious criminal conduct. However, the next sentence "[t]he defendant may count as one of those members if you find that the defendant was a member of the gang" clearly indicates the defendant cannot be one of the two or more gang members who commit the felonious criminal conduct, unless the defendant is a "member of the gang."

Appellant's argument leads to incongruous results. According to the first sentence (as construed by appellant), *any* gang member from any gang could be one of the two or more gang members who commit the requisite felonious criminal conduct, whether or not that gang member was a member of the criminal street gang in which the defendant actively participated. However, this would be subject to the exception that, according to the second sentence, *the defendant*, unlike all other gang members, could not be one of the two or more gang members committing said conduct unless the defendant was a "member of the gang," i.e., unless the defendant was a member of the criminal street gang in which the defendant actively participated. The result would be a broad application of the challenged phrase "two or more gang members" to all but the

defendant, a result at odds with the express purpose of the STEP Act. Particularly where, as here, appellant never objected to CALCRIM No. 1400, the trial court did not err, constitutionally or otherwise, by instructing pursuant to CALCRIM No. 1400 that "[a]t least two gang members must have participated in committing the felony offense."

Appellant also argues the trial court erred by instructing with CALCRIM No. 1400 because it erroneously suggested the jury could convict him for a violation of section 186.22, subdivision (a) "*if [the jury] found that he was a gang member and acted with a member of some other gang to promote, further or assist* felonious criminal conduct by gang members." (Italics added.) We reject the argument.

"The words *'promotes, furthers, or assists'* are the verbs describing *the defendant's* acts, . . . The prepositional phrase *'by members of that gang'* indicates *who* performs *the felonious criminal conduct*." (*Rodriguez, supra*, 55 Cal.4th at p. 1132, italics added.) Appellant's suggestion conflates *the person* who "willfully promotes, furthers, or assists in" within the meaning of section 186.22, subdivision (a) with *the persons* who engage in "any felonious criminal conduct" within the meaning of that subdivision. In other words, as long as members of the same gang commit any felonious criminal conduct, and the defendant "willfully promotes, furthers, or assists in" any such conduct, the third element of subdivision (a) is satisfied whether or not the defendant, when willfully promoting, etc., such conduct, acts alone or with another, or, in particular, acts as a gang member with a member of some other gang. No instructional error occurred.

3. *The Court Properly Instructed "Felonious Criminal Conduct" Meant Conspiracy.*

CALCRIM No. 1400 stated, in relevant part, "Felonious criminal conduct means committing or attempting to commit any of the following crimes: *conspiracy* to commit extortion by threat or *conspiracy* to commit the sale of a controlled substance." (Italics added.) Appellant argues the instruction was erroneous because, as a matter of law, conspiracy cannot be "felonious criminal conduct" within the meaning of section 186.22, subdivision (a) because conspiracy is an inchoate crime, not a "completed" crime. We reject appellant's claim.

10

Appellant's claim essentially presents an issue of statutory interpretation. Section 186.22, subdivision (a) refers to a person who willfully promotes, etc., "*any* felonious criminal conduct by members of that gang." (Italics added.) Our Supreme Court has stated the "plain, unambiguous language of the statute targets *any* felonious criminal conduct." (*Rodriguez, supra,* 55 Cal.4th at p. 1131.) The plain meaning of the statute governs. (Cf. *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 905.) The instructional language at issue was based on the statute. No instructional error occurred.

Appellant cites *People v. Iniguez* (2002) 96 Cal.App.4th 75 (*Iniguez*) to support his argument that "[a] gang participation charge founded on promoting inchoate 'felonious criminal conduct' such as conspiracy, rather than the substantive offense which is the object of that conspiracy 'is a conclusive legal falsehood.' [Citation.]" Appellant's reliance on *Iniguez* is misplaced. *Iniguez* did not involve the crime of active participation in a gang (§ 186.22, subd. (a)). *Iniguez* held the alleged crime of conspiracy (§ 182; *Iniquez*, at p. 77, fn. 1) to commit attempted murder is a "conclusive legal falsehood" (*Iniguez,* at p. 79) because the alleged conspiracy would (1) require an intent to do an *ineffectual* act towards murder (i.e., an intent to do the actus reus of attempted murder), and yet (2) require an intent to *actually* commit murder (i.e., the mens rea of attempted murder). *Iniguez*, reasoning no one could both intend not to murder and intend to murder, held conspiracy to commit attempted murder was a nonexistent offense. (*Ibid.*) However, a person who "willfully promotes, furthers, or assists in any felonious criminal conduct" is not necessarily a conspirator, nor does such a person necessarily have the contradictory mental states presented in *Iniguez.*

Appellant, for the first time in his reply brief, expressly refers to attempted conspiracy and argues attempted conspiracy is not a crime, therefore, CALCRIM No. 1400 erroneously indicated felonious criminal conduct could include attempted conspiracy. Appellant waived the issue by raising it for the first time in his reply brief. (Cf. *People v. Jackson* (1981) 121 Cal.App.3d 862, 873.)

11

4. *The Court Did Not Err by Failing to Give a Unanimity Instruction.*

CALCRIM No. 1400 stated, in relevant part, "Felonious criminal conduct means committing or attempting to commit any of the following crimes: conspiracy *to commit extortion by threat* or conspiracy *to commit the sale of a controlled substance*." (Italics added.) Appellant essentially argues the court should have instructed the jury it had to agree unanimously as to which particular crime(s) was the target(s) of the conspiracy. We reject appellant's claim.

" 'The key to deciding whether to give the unanimity instruction lies in considering its purpose. . . . [T]he unanimity instruction is appropriate "when conviction on a single count could be based on two or more discrete criminal events," but not "where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event." ' [Citation.]" (*Hajek, supra*, 58 Cal.4th at p. 1221.) This is not a case in which a unanimity instruction would have been appropriate under the rationale a " ' "*conviction* on a single count" ' " (*ibid.*) of *conspiracy* could have been based on two or more discrete criminal events. Appellant was neither charged with, nor convicted of, conspiracy.

The only offense of which appellant was " ' "convict[ed] on a single count" ' " (*Hajek, supra*, 58 Cal.4th at p. 1221) was active participation in a gang. This is not a case in which a conviction on a single count of active participation in a gang could have been based on two or more discrete criminal events. It is true the jury had to agree unanimously that appellant committed "felonious criminal conduct" since that is an element of active participation in a gang. It is also true the instruction told the jury that "felonious criminal conduct" meant conspiracy to commit extortion by threat or conspiracy to commit the sale of a controlled substance. However, extortion by threat, and selling a controlled substance, were merely theories of targets of the conspiracy. In this case, then, *multiple theories or acts of targets* of a conspiracy might have formed, along with other evidence, the basis of a guilty verdict on one discrete event, i.e., active participation in a gang. The trial court was not required to give a unanimity instruction.

12

Appellant cites a bench note to CALCRIM No. 415 (a pattern conspiracy instruction given in this case) that cites *People v. Diedrich* (1982) 31 Cal.3d 263, 285-286 (*Diedrich*) and that states "it *appears* that a unanimity instruction is required when the prosecution alleges multiple crimes that may have been the target of the conspiracy." (Italics added.) However, first, bench notes do not have the force of law. (*People v. Alvarez* (1996) 14 Cal.4th 155, 223, fn. 28.) Second, *Diedrich* had no occasion to discuss whether a trial court was required to give, sua sponte, unanimity language concerning conspiracy targets. In *Diedrich*, the defendants claimed the trial court erred by refusing to give defense-requested instructions that included such unanimity language. (*Diedrich,* p. 285, fn. 17.) *Diedrich* rejected the claim, in part because other instructions given by the court "adequately instructed" on the issue. (*Id*. at p. 285.) Finally, the unanimity language in *Diedrich* pertained to a charged conspiracy of which the defendants in that case were *convicted* (*id*. at pp. 267, 285, fn. 18). Appellant's reliance on the bench note is inapposite.

*DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


JONES, J.[*]

We concur:


ALDRICH, Acting P. J.


LAVIN, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.